STATE OF TEXAS v. TEXAS & NEW ORLEANS RAILROAD COMPANY.

Decided January 7, 1910.

**1.—Telegraph Operators—Regulation of Hours—Act Unconstitutional.**

The Act of the Thirtieth Legislature (Gen. Laws, 1907, p. 222), providing an eight hour day for railroad, telegraph or telephone operators, is unconstitutional and void in that it is in conflict with an Act of Congress upon the same subject, passed on March 4, 1907, and this, although the Act of Congress did not take effect until some months after the State law would have taken effect.

**2.—Same—Interstate Commerce—Exclusive Jurisdiction of Congress.**

It is well settled that the power of Congress to regulate interstate commerce under the provisions of the Constitution, is plenary and includes the power to prescribe the qualifications, duties and liabilities of employees of railway companies engaged in interstate commerce, and any legislation by Congress on such subject supersedes any State law upon the same subject.

Error from the District Court of Liberty County. Tried below before Hon. L. B. Hightower.

*H. B. Tucker* (County Attorney, Liberty County) and *Marshall & Marshall,* for plaintiff in error.

*Baker, Botts, Parker & Garwood, Stevens & Pickett* and *Parker, Hefner & Orgain,* for defendant in error.

PLEASANTS, CHIEF JUSTICE.—This suit was brought by the State of Texas against the defendant in error to recover penalties for the alleged violation of the Act of the Thirtieth Legislature prescribing the length of time of continuous service of telegraph operators

employed by railway companies. The petition alleges facts showing 655 violations by the defendant of the provisions of the Act of the Legislature above mentioned, by which defendant, under the penalties prescribed by said Act, became liable to plaintiff in the sum of $65,500.

The defendant answered by general demurrer and eleven special exceptions. These exceptions attack the petition on the ground that the legislative Act under which the suit was brought is unconstitutional and void.

The general demurrer and all of the special exceptions were sustained by the trial court and plaintiff's suit dismissed.

The material provisions of the Act under which the suit was brought are as follows:

"Sec. 1. That it shall be unlawful for any person, corporation or association operating a railroad within this State to permit any telegraph or telephone operator who spaces trains by the use of the telegraph or telephone under what is known and termed "Block System," defined as follows: Reporting trains to another office or offices, or to a train dispatcher operating one or more trains under signals, and telegraph or telephone levermen who manipulate interlocking machines in railroad yards or on main tracks out on the lines connecting side-tracks or switches, or train dispatchers in its service whose duties substantially, as hereinbefore set forth, pertain to the movement of cars, engines or trains on its railroad by the use of the telegraph or telephone in dispatching or reporting trains, or receiving or transmitting train orders as interpreted in this section, to be on duty for more than eight hours in any twenty-four consecutive hours; provided, that the provisions of this Act shall not apply to railroad, telegraph or telephone operators at stations where the services of only one operator is needed.

"Sec. 2. And be it enacted, that any person, corporation or association that shall violate section 1 of this Act shall pay a fine of one hundred dollars for each violation of this Act.

"Sec. 3. It shall be unlawful for any railroad, telegraph or telephone operator to work more than eight hours in twenty-four consecutive hours at such occupation, and any such operator violating this section shall pay a fine in any sum not less than twenty-five dollars nor more than one hundred dollars; provided, that in case of an emergency any operator may remain on duty for an additional two hours.

"Sec. 4. And be it enacted, that the fine mentioned in section 2 of this Act shall be recovered by an action of debt in the name of the State of Texas for the use of the State, who shall sue for it against such person, corporation or association violating this Act, said suit to be instituted in any court in this State having appropriate jurisdiction."

One of the grounds upon which this Act was held void by the trial court is that the Congress of the United States, acting under power conferred upon it by section 8 of article 1 of the Federal Constitution, has passed an Act prescribing the time of continuous service of all telegraph operators employed by railway companies engaged in interstate transportation, and the Act of the Legislature being in conflict with the provisions of said Act of Congress is obnoxious to that por-

tion of article VI of the Constitution of the United States which provides that "This Constitution and the laws of the United States which shall be made in pursuance thereof, and all treaties made or which shall be made under the authority of the United States, shall be the supreme law of the land, and the judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." The Act of Congress above mentioned contains the following provisions:

"That no operator, train dispatcher, or other employee who by use of the telegraph or telephone dispatches, reports, transmits, receives or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places and stations operated only during the daytime, except in case of emergency, when the employees named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four-hour period on not exceeding three days in any week."

The conflict in the provisions of the two Acts is apparent and both Acts can not be valid and operative as to telegraph operators employed by railroad companies engaged in interstate transportation when such operators are employed in such transportation service. It is well settled that the power of Congress to regulate interstate commerce under the provisions of the Constitution before mentioned, is plenary and includes the power to prescribe the qualifications, duties and liabilities of employees of railway companies engaged in interstate commerce, and any legislation by Congress on such subject supersedes any State law upon the same subject. Nashville, C. & St. L. Ry. Co. v. Alabama, 128 U. S., 99; Howard v. Illinois Cent. Ry. Co., 207 U. S., 463.

The constitutional right of Congress to legislate upon this subject having been exercised by that body, the right of the State to invade this field of legislation ceased, or, at all events, no Act of a State Legislature in conflict with the Act of Congress upon the same subject can be held valid. The Supreme Courts of Missouri and Wisconsin in passing upon the validity of statutes of said States similar to the Act we were considering, hold such statutes void upon the ground of conflict with the Act of Congress before mentioned. State v. Missouri Pac. Ry. Co., 111 S. W., 500; State v. Chicago, M. & St. P. Ry. Co., 117 N. W., 686.

The Act of the State Legislature under which this suit was brought was approved April 16, 1907, and took effect August 12, 1907. The Act of Congress before mentioned was passed March 4, 1907, but contains a provision that it should take effect one year after its passage. We do not think the Act of the State Legislature can be held operative during the time intervening between the passage and the taking effect of the Act of Congress. In discussing this question the Missouri court, in the case above cited, say:

"We must construe the Federal Act by reading into its dry letter its manifest spirit and purpose. Its dry letter reads that it shall not

go into effect for one year. What was the meaning of, the object to be subserved by, that suspension of the operation of the law? What, except to preserve the equities of the situation by impliedly giving common carriers engaged in interstate commerce one year in which to get a supply of experienced telegraph and telephone operators and train men to carry on their business without interruption and hindrance, and otherwise adjust their business affairs to the shorter hours required by that Act? When broadly judged, the Federal law must be construed as a notice (in the nature of a caveat) to all State Legislatures, first, that Congress has occupied the ground by its statutory regulations; second, that in its high wisdom it has prescribed and marked out a transition or preparatory period of one year (a sort of truce period). Now, with such broad and wise purposes read into the Federal Act shall any State Legislature thereafter sit and say, in effect, 'We deem it too long and too liberal?' Shall it say, in effect, 'We see you have suspended your Act for one whole year; we find by mathematical computation there is left six months or so, which we may cover by a State law, and accordingly we shall pass a law giving shorter hours than yours, that will be good, at least from June 14, 1907, until March 4, 1908?' If the one law grants, by necessary implication, a breathing spell, shall the other take it away? If the one chalks out a policy, may the other rub it out? In our opinion, the comity that shall exist between State and Federal legislative power prohibits our taking that ungracious and narrow view. Whether the Federal Act is constitutional or not, we may not decide —such prerogative is lodged elsewhere. With the wisdom of Federal exercise of police power in the matter in hand, we have nothing whatever to do; that is a matter for Congress. It is sufficient for us to know that uniformity in police regulations, involving interstate commerce, seems, in the last few years, under the pressure of current events, to have called for Federal legislation—a sample of which is the automatic coupling Act, lately under review in Johnson v. Southern Pac. Railroad, 196 U. S., 1; Schlemmer v. Buffalo, R. & P. Railroad, 205 U. S."

The contention of appellant that the legislative Act is not void because it only lessens the hours of labor prescribed by the Act of Congress and therefore is not in conflict with the Act, the main purpose of which is to prevent the employment of telegraph operators by railway companies for a longer time than nine hours, is not sound. The Act of the Legislature makes unlawful that which is not prohibited by the Act of Congress pertaining to the same subject matter, and this the State Legislature can not do.

If it be possible for the State to prescribe rules of employment for those engaged in railroad transportation which would only affect such employees when engaged in intrastate business, the Act in question does not attempt to make this distinction, but by its terms is applicable to all railroads and railroad employees of the class mentioned, irrespective of the character of the commerce in which they may be engaged. The opinion in the Wisconsin case, *supra,* fully discusses this question and the reasoning of the opinion is, we think, unanswerable. We quote from that opinion as follows:

"The further contention is made by the respondent that, even if it be beyond the power of the State to restrict the services of an operator engaged in moving interstate trains, it is competent to so restrict as to one engaged exclusively upon trains or business wholly within the State and that the law may be so construed as so limited, and its validity as so limited be sustained. The principle invoked is doubtless sound, if it is reasonably possible to separate the permissible from the forbidden, and to believe that the Legislature intended by the Act to effect the one and omit the other. On this subject, the Employers' Liability Cases, 207 U. S., 463, are entirely germane and controlling. It is there pointed out that by its terms the Act is aimed at the employer, and makes no distinction in denunciation of his acts, whether they be done in interstate or intrastate business, so that it in terms regulates purely domestic acts and transactions. Chapter 575, p. 1188, Laws of 1907, is even more objectionable in this regard than the Employers' Liability Act, for it in terms is directed to every corporation operating a line of railroad in whole or in part in the State of Wisconsin, thus expressly including those who are engaged in interstate commerce. But it is also open to the other objection, held to be fatal, that it restricts the employment of all operators, without discrimination as to the character of their services. This alone, under the reasoning of the Employers' Liability Act, must condemn the State Act, for it is matter of common knowledge, and is set up as a fact by the answer, that any operator who works upon trains or transportation wholly within the State, also necessarily at the same time works upon interstate trains and transportation. The State Legislature has in terms undertaken to restrict hours of work of employees engaged in safeguarding and conducting interstate commerce, as well as domestic; and, controlled as we must be by the decision of the Federal Supreme Court, we can not import a meaning contradictory to the express words. Neither can we feel any certainty that the generality of the restriction was not an essential element in the entire legislative scheme, so that we might believe the Legislature would have imposed upon domestic commerce, or on employees exclusively engaged therein, burdens not also resting on entirely similar acts of employees involving interstate trains or commerce.

"Apart, however, from the controlling effect of the reasons urged in the Employers' Liability Cases, and in addition thereto, we think the impracticability, if not impossibility, of limiting hours of work devoted to domestic commerce alone is so obvious as to preclude belief in any such legislative purpose. That impracticability is largely shown by facts alleged in the answer, but also by facts which are matter of common knowledge. The direction and dispatching of every train on an interstate railway necessarily involves knowledge in the train dispatcher of all other trains which are in the same vicinity at the same time, and also ability to control such other trains. An interstate train from Milwaukee to Chicago can not be safely forwarded if, under the direction of a separate employee, a local train may be moving between Milwaukee and Racine, over the same track, at the same time, or nearly so. The very switching at local stations must be within the knowledge and under the control of him who is to decide

upon and direct the most important of interstate transportation. Obviously, division of authority over those subjects would be fraught with great perils and delays to both kinds of transportation. Hardly any act of a train dispatcher on a busy railroad can be conceived which does not affect both interstate and domestic commerce. He can not move or stop the most distinctively local train without affecting the interstate train, or *vice versa*. No extra or special can be put on the division without adjustment of other trains. Of course, also, every interstate train carries some purely intrastate freight or passengers. Many purely domestic trains carry some freight or passengers in transit to interstate destination. It would seem that any severance of control over State from interstate trains involves so much of confusion and probability of danger, and its possibility even is so doubtful and experimental, that no Legislature would absolutely precipitate it without careful consideration nor without providing in the Act for the event of the failure of such experiments. For this reason as well, we are convinced that the legislative words include the regulation of services of all operators, and would in no wise be satisfied, even in part, by a restriction to those whose acts affect only domestic commerce, if, indeed, there are any such."

In our opinion the trial court correctly held that the Act under which this suit was brought is void upon the ground above stated, and plaintiff's suit was properly dismissed.

This conclusion renders a discussion of the other questions presented by the record unnecessary. It follows that the judgment of the court below should be affirmed, and it has been so ordered.

*Affirmed.*

Writ of error refused.