The People of the State of New York, Appellant, v. Erie Railroad Company, Respondent.

Railroads — Labor Law — statutory regulation of hours of labor of block system telegraph and telephone operators and signalmen — power of legislature to enact such law — when not in conflict with Federal statutes relating to same subject.

The legislature had power to enact section 7a of the Labor Law (now Cons. Laws, chap. 31, § 8), making it unlawful for an employee of a railroad engaged in moving interstate as well as intrastate commerce, who is in charge of one of its block signal towers, to be on duty more than eight hours in twenty-four and imposing a fine for the violation thereof.

The doctrine that the legislature under proper circumstances and within reasonable limits may exercise its police power in the regulation of hours and conditions of labor is now thoroughly and broadly established, and the control of this matter by the legislature is naturally exercised by virtue of that power.

The general subject of commerce for the purpose of defining Federal and State jurisdiction in legislation may be divided into three fields. The first is that in which the power of the state is exclusive; the second that in which the state may act in the absence of legislation by Congress which is controlling and exclusive; the third that in which the authority of Congress is exclusive and the states cannot interfere at all. The act here involved comes within the second one.

Where Congress has prescribed a general minimum limit of safety applicable to average conditions throughout the country in the movement of interstate traffic, a state statute does not trespass upon forbidden territory and become obnoxious because, in response to special conditions prevailing within its borders, it has raised such limit of safety.

The Federal statute providing that such an employee shall not "remain on duty for a longer period than nine hours in any twenty-four hour period" does not bar legislation by the state limiting such employment to a lesser number of hours. There is no conflict. It is the same as if Congress had enacted that the classes of employees named might be employed for nine hours or less, and the state had then fixed the lesser number, which was left open by the Federal statute. (*Gulf, etc., Ry. Co.* v. *Hefley*, 158 U. S. 98, distinguished.)

The general rule is that a statute does not become controlling until it actually becomes operative; hence, the provisions of the state statute were controlling in any view during the period elapsing between the date of the enactment of the Federal statute and the date when it

took effect, and within which period the violation occurred which is complained of here.

*People* v. *Erie R. R. Co.*, 135 App. Div. 767, reversed.

(Argued March 1, 1910; decided April 26, 1910.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 10, 1909, reversing a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term, a jury having been waived, and granting a new trial.

This action was brought to recover a judgment against the defendant for a fine because it permitted or required an employee in charge of one of its block signal towers to be on duty more than eight hours in twenty-four in violation of the provisions of section 7a of the Labor Law (now section 8 of the Labor Law in the Consolidated Laws) which reads as follows : "It shall be unlawful for any corporation or receiver, operating a line of railroad, either surface, subway or elevated, in whole or in part in the state of New York, or any officer, agent or representative of such corporation or receiver to require or permit any telegraph or telephone operator who spaces trains by the use of the telegraph or telephone under what is known and termed the 'block system' (defined as follows): Reporting trains to another office or offices or to a train dispatcher operating one or more trains under signals, and telegraph or telephone levermen who manipulate interlocking machines in railroad yards or on main tracks out on the lines or train dispatchers in its service whose duties substantially, as hereinbefore set forth, pertain to the movement of cars, engines or trains on its railroad by the use of the telegraph or telephone in dispatching or reporting trains or receiving or transmitting train orders as interpreted in this section, to be on duty for more than eight hours in a day of twenty-four hours, and it is hereby declared that eight hours shall constitute a day of employment for all laborers or employees engaged in the kind of labor aforesaid ; except in cases of extraordinary emergency caused by accident, fire, flood, or danger to life or property, and for each hour

of labor so performed in any one day in excess of such eight hours, by any such employee, he shall be paid in addition at least one-eighth of his daily compensation. Any person or persons, company or corporation, who shall violate any of the provisions of this section, shall, on conviction, be fined in the sum of not less than one hundred dollars, and such fine shall be recovered by an action in the name of the state of New York, for the use of the state, which shall sue for it against such person, corporation or association violating this section, said suit to be instituted in any court in this state having appropriate jurisdiction. Such fine, when recovered as aforesaid, shall be paid without any deduction whatever, one-half thereof to the informer, and the balance thereof to be paid into the free school fund of the state of New York. The provisions of this section shall not apply to any part of a railroad where not more than eight regular passenger trains in twenty-four hours pass each way; provided, moreover, that where twenty freight trains pass each way generally in each twenty-four hours then the provisions of this section shall apply, notwithstanding that there may pass a less number of passenger trains than hereinbefore set forth, namely eight."

The defendant was engaged in both interstate and intrastate commerce, and the majority of the trains which the employee in question spaced were moving the former.

*Edward R. O'Malley, Attorney-General,* and *Edward H. Letchworth* for appellant. The power to regulate the hours of labor of employees engaged in the operation of railway trains is within the police power of the state. (*People* v. *O. C. R. C. Co.,* 175 N. Y. 84; *People ex rel. Rodgers* v. *Coler,* 166 N. Y. 1; *People ex rel. W. E. Co.* v. *Metz,* 193 N. Y. 148; *W. B. Co.* v. *Gilmore,* 8 Ohio C. C. 658; *Matter of Jacobs,* 98 N. Y. 98, 115; *Holden* v. *Hardy,* 169 U. S. 366; *Lochner* v. *New York,* 198 U. S. 45; *N. Y., N. H. & H. R. R. Co.* v. *New York,* 165 U. S. 628; *Knoxville Iron Co.* v. *Harbison,* 183 U. S. 13; *Jacobson* v. *Massachusetts,* 197 U. S. 11; *People* v. *Lochner,* 177 N. Y. 145; 198 U. S. 45.)

The right to regulate the hours of labor of employees of railroad corporations engaged in operating trains is within the reserved power of the state to amend corporate charters. (Const. of N. Y. art. 8, § 1; *Leep* v. *Railway Co.*, 58 Ark. 407; *St. L. Ry. Co.* v. *Paul*, 173 U. S. 404; 64 Ark. 83, 89; *State* v. *B. & S. Mfg. Co.*, 18 R. I. 16; *Roxbury* v. *B., etc., Corp.*, 6 Cush. 424, 432; *B., etc., R. Co.* v. *Smith*, 47 Me. 34; *Shaffer* v. *U. M. Co.*, 55 Md. 74; *Matter of Huntington*, 168 N. Y. 399; *Pratt Institute* v. *City of New York*, 183 N. Y. 151; *People ex rel. Cooper Union* v. *Gass*, 190 N. Y. 323; *People ex rel. Hospital* v. *Raymond*, 194 N. Y. 189.) The section of the statute here assailed is not invalid as depriving the defendant of the equal protection of the laws. (*People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8; *McLean* v. *Arkansas*, 211 U. S. 539; *Cook* v. *Marshall County*, 196 U. S. 261; *Nichol* v. *Ames*, 173 U. S. 509; *People* v. *Havnor*, 149 N. Y. 195; *H. T. Co.* v. *Los Angeles*, 211 U. S. 265; *People ex rel. W. E. Co.* v. *Metz*, 193 N. Y. 148; *N. Y. & N. E. R. R. Co.* v. *Bristol*, 151 U. S. 556.) The statute is not unconstitutional as an unauthorized interference by the state with interstate commerce. (*C. B. Co.* v. *Kentucky*, 154 U. S. 204; *C., etc., R. Co.* v. *Illinois*, 177 U. S. 514; *M., etc., R. Co.* v. *Mississippi*, 210 U. S. 187; *Employers' Liability Cases*, 207 U. S. 463; *Peterson* v. *State*, 112 N. W. Rep. 306; *C., etc., R. Co.* v. *State*, 111 S. W. Rep. 456; *M., K. & T. R. Co.* v. *Haber*, 169 U. S. 613; *State* v. *C., etc., R. Co.*, 117 N. W. Rep. 686; *G., C. & St. L. Ry.* v. *Hefley*, 158 U. S. 98.)

*George N. Orcutt* and *George F. Brownell* for respondent. The statute deprives both the employer and the employee of liberty of contract and of property without due process of law, the employer of its capital and the employee of the wages which he would earn by working more than eight hours, and is, therefore, in conflict with the State and Federal Constitutions. (*Matter of Jacobs*, 98 N. Y. 110; *People* v. *Marx*, 99 N. Y. 377; *People* v. *Gilson*, 109 N. Y. 389; *Gil-*

*man* v. *Tucker*, 128 N. Y. 190; *Foster* v. *Scott*, 136 N. Y. 577; *Colon* v. *Lisk*, 153 N. Y. 188; *People* v. *Hawkins*, 157 N. Y. 1; *People ex rel. Rodgers* v. *Coler*, 166 N. Y. 1; *People* v. *O. C. R. C. Co.*, 175 N. Y. 84; *People* v. *Groat*, 179 N. Y. 417.) The statute in question is not in fact or in form an exercise of the reserved power of the legislature, whatever may be the extent of that power to alter or amend charters. It is an amendment of the Labor Law. (*Lord* v. *E. L. A. Society*, 194 N. Y. 224; *Matter of Ashby*, 60 Kan. 101; *State of Kansas* v. *Haun*, 47 L. R. A. 369; *People* v. *A. R. R. Co.*, 125 N. Y. 513.) Assuming that the statute in question is to be construed as an attempt by the legislature to alter or amend the charter of the defendant, the statute cannot be sustained as a valid exercise of that power. (*Lord* v. *E. L. Assur. Society*, 194 N. Y. 212; *Shields* v. *Ohio*, 95 U. S. 319; Freund on Police Power, § 363; *L. S. R. Co.* v. *Smith*, 173 U. S. 685; *Leep* v. *S. L., I. M. & S. P. R. R. Co.*, 23 L. R. A. 264; *S. L., I. M. & S. P. R. R. Co.* v. *Paul*, 173 U. S. 404; *Lawrence* v. *R. R. R. Co.*, 60 Atl. Rep. 1091; *Atkin* v. *Kansas*, 191 U. S. 207; *State* v. *B. & S. Mfg. Co.*, 18 R. I. 16.) The statute violates the 14th amendment of the Constitution of the United States in that it denies the equal protection of the laws in the respects hereinafter stated. (*Minor* v. *E. R. R. Co.*, 171 N. Y. 566; *B. L. Co.* v. *Bough*, 80 N. E. Rep. 529; *T. S. L. & W. R. Co.* v. *Long*, 82 N. E. Rep. 757; *Kane* v. *E. R. R. Co.*, 133 Fed. Rep. 681; *Connolly* v. *U. S. P. Co.*, 184 U. S. 540; *People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8; *People* v. *Ringe*, 197 N. Y 143; *Matter of Eight Hour Bill*, 21 Col. 29; *Low* v. *R. P. Co.*, 41 Neb. 127; *W. B. & T. R. R. Co.* v. *Gilmore*, 8 Ohio C. C. 658.) The act of Congress fixing nine hours as the day's work of telegraph operators engaged in spacing trains by the block system is exclusive. (*Covington Bridge Case*, 154 U. S. 204; *State* v. *C., M. & S. P. Ry. Co.*, 117 N. W. Rep. 686; *Johnson* v. *S. P. Co.*, 196 U. S. 1; *State* v. *N. P. Ry. Co.*, 93 Pac. Rep. 945; *C., M. & S. P. Ry. Co.* v. *Solan*, 169 U. S. 133.)

Hiscock, J.   If section 7a of the Labor Law, above quoted, was a valid enactment in August, 1907, applicable to a block signal tower operator engaged in spacing interstate and local trains, the order appealed from was erroneous and the judgment of the trial court correct, because there is no question that during that month the respondent required one of its employees thus engaged to be on duty more than eight hours out of twenty-four in violation of the provisions of that act. Two reasons are alleged why said statute was not valid and applicable.   The first of these is that the legislature had no power to place such a limitation on the right of the respondent to keep such an employee on duty, and the second one is that such employee being in part engaged in forwarding interstate commerce Congress had the superior power to regulate his hours of labor and that it had done this by legislation which barred or superseded the State legislation referred to.

It is clear that the first defense cannot be maintained.   The doctrine that the legislature under proper circumstances and within reasonable limits may exercise its police power in the regulation of hours and conditions of labor is now thoroughly and broadly established.   One familiar form of this class of legislation is that which has for its object the promotion of the health and welfare of the employee as especially in the case of women and children.   Another class seeks to protect the safety of the public by limiting the hours of labor of those who are in control of dangerous agencies lest by excessive periods of duty they become fatigued and indifferent and cause accidents leading to injuries and destruction of life. This statute comes within the latter class, and this court in the case of *Pelin* v. *N. Y. C. & H. R. R. R. Co.* (102 App. Div. 71 ; 115 App. Div. 883 ; 188 N. Y. 565), affirmed a judgment where the basis of the recovery was as here, that the defendant had permitted or required an employee to be on duty for a length of time in excess of that prescribed by another section of the act which we are now considering.

The counsel for the respondent has reviewed at length the duties discharged and the exact amount of time required in

the actual performance thereof by the operator on the occasion in question, and he makes these facts the basis for an argument that no conditions existed which warranted the legislature in fixing the limit which it did, and he insists that the period of service prescribed for this particular class of employees is entirely out of proportion to that permitted to various other employees engaged in the operation of a railroad. His argument is not without force, and very well might be addressed to the legislature as a reason for permitting employment for a larger number of hours. I do not think, however, that we can say that the facts so conclusively show a lack of relation between the legislation and the justifiable ends sought to be gained that we can condemn the statute as unconstitutional. For, while each of the duties performed by the operator seems simple enough, still as a whole they form quite a complicated series of acts in the transmission of signals, the giving of orders and the movement of trains, and while the actual time occupied in performing these acts is not large, still the employee for the proper discharge of his duties is compelled to be on the alert during the entire time of his employment, and it not infrequently happens that lack of active occupation during hours of duty is more trying than work itself. Thus it is not at all inconceivable that such an employee subjected to too long hours of duty and confinement might become physically fatigued and mentally inert and make mistakes which would lead to the destruction of life. This being so, it was permissible for the legislature to pass a statute limiting the hours of labor, and it cannot be said that there is no reason or argument to support its judgment that eight hours was a proper limit.

The control of such a matter by the legislature would naturally be exercised by virtue of the police power. If the form of the statute in question could be criticised as relating only to corporations engaged in the operation of railroads, and, therefore, unduly discriminatory against them, it now being settled that an individual as well as a corporation may operate a railroad ( *Village of Phœnix* v. *Gannon,* 195 N. Y.

471), I think that we might take judicial notice of the fact that all of the railroads in the state to which this act could apply are and almost necessarily must be operated by corporations and not by individuals, since the latter have no power to acquire land by eminent domain for railroad purposes. (*Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322.)

Moreover, even if the statute failed as a valid exercise of the police power, personally I am not doubtful that under its reserved control over corporations the legislature might pass such an act in regulation of the performance of the business for which a railroad was organized. (*Lord* v. *Equitable Life Assurance Society,* 194 N. Y. 212, 237; *People* v. *Phyfe,* 136 N. Y. 554, 557; *Chicago Life Ins. Co.* v. *Needles,* 113 U. S. 574; *Louisville & N. R. R. Co.* v. *Kentucky,* 161 U. S. 677; *Mayor, etc.,* v. *Norwich & Worcester R. R. Co.,* 109 Mass. 103.)

Equally important and possibly of more difficult solution are the considerations presented by the second defense, that the statute here sought to be enforced trespasses on a field of legislative action which had already been pre-empted by Congress by virtue of its power to govern interstate commerce and those engaged therein, and that, therefore, it was forbidden and nugatory. It will be noted that this defense assumed, as I think correctly, that the Labor Law purports and attempts indiscriminately and inseparably, to regulate the hours of the classes of employees designated whether engaged in interstate or local traffic, and that, therefore, its validity must be tested by the power of the legislature over the former.

This defense is predicated on the fact that Congress passed a statute, approved March 4, 1907, and taking effect a year later, which, so far as is here material, provided : " No operator, train dispatcher or other employee who by the use of the telegraph or telephone dispatches, reports, transmits, receives or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places and stations continuously operated

day and night." Concededly this statute applied to such an operator as the one whose alleged excessive confinement is complained of here when engaged in operating interstate traffic, and the reasoning is that Congress having thus regulated his hours of labor the state could not prescribe a different or additional regulation applicable to the same man.

As is well understood, the general subject of commerce for the purpose of defining Federal and State jurisdiction in legislation may readily be divided into three fields. The first is that in which the power of the state is exclusive ; the second that in which the state may act in the absence of legislation by Congress which is controlling and exclusive ; the third that in which the authority of Congress is exclusive and the states cannot interfere at all. (*Covington & C. Bridge Co.* v. *Kentucky*, 154 U. S. 204, 209.)

It is important to keep in mind for the purposes of this discussion that within the first field are included regulation by the state of local or intrastate commerce, and it is conceded and, therefore, the reasons will not be discussed, that the state acting within the second field might pass the present statute in the nature of a police regulation of the hours of those engaged in interstate as well as local commerce, unless the Federal statute barred such legislation. Did it do so ?

Of course it is apparent that if the Federal statute saying that a signal tower operator may not work *more* than *nine* hours prevents a state from saying under controlling conditions that he may not work in excess of a *lesser* number of hours, State legislation of an analogous character on other subjects which readily suggest themselves, such as the proper weight of rails, the safe speed of trains, the necessary proportion of cars to be equipped with air brakes, may be prevented by Federal legislation simply prescribing the minimum rule of precaution, and the protection by the state of the safety of its citizens at least rendered more complicated and difficult. For unless there shall be in the future such a separation of interstate and local traffic as has not yet occurred, and which might be made extremely burdensome to the railroads, it will

seldom happen that agencies employed in moving the former will not also be moving the latter, and, therefore, if the state is prevented by a Federal statute like that before us from adopting addititional but not conflicting requirements which it deems to be necessary, it will be unable to insure the safety of local passengers and traffic. And it is obvious that a factor of safety like that in the present Federal statute adapted as we must assume to average conditions prevailing throughout the country often will be quite insufficient under the special conditions prevailing in a given state.

In addition, it is doubtless established by the *Employers' Liability Cases* (207 U. S. 463) that a person injured in the course of local traffic, as the result of negligence of an employee, could not predicate a claim for relief on the Federal statute limiting the latter's hours of employment.

Passing these general considerations, when we seek for authorities on the question whether the Federal statute is exclusive and preventive of the state statute, no decision by the Supreme Court of the United States is found rendered upon facts so similar to those here presented as to make it clearly and manifestly controlling. We are obliged to rely on general rules which have been laid down by that learned court from time to time in the consideration of questions of the same general class and which do not seem to be always quite harmonious.

In *Gulf, C. & S. F. Ry. Co.* v. *Hefley* (158 U. S. 98) the court had before it the question whether a state statute making it unlawful for a railroad company to charge and collect a greater sum for freight than was specified in the bill of lading was when applied to interstate freight in conflict with a Federal statute providing that it should be unlawful to charge and collect a greater or less compensation for the transportation of property than was specified in the published schedule of rates provided for by the act. It was conceded that the state act, although incidentally relating to interstate commerce, would be valid as a police regulation in the absence of congressional legislation, but it was held that it conflicted with

the latter and was, therefore, invalid. Mr. Justice Brewer, writing for the court, said: "Clearly the state and the national acts relate to the same subject-matter and prescribe different rules. * * * The carrier cannot obey one statute without sometimes exposing itself to the penalties prescribed by the other. * * * In case of such a conflict the state law must yield. * * * The question is not whether, in any particular case, operation may be given to both statutes, but whether their enforcement may expose a party to a conflict of duties. It is enough that the two statutes operating upon the same subject-matter prescribe different rules. In such case one must yield and that one is the state law."

If we should apply the language quoted with any degree of literalness to the present case it would be difficult to escape the conclusion that the eight-hour state statute was barred by the Federal statute. But it is to be observed that what was there written was so written in a case where at times it would not be possible to observe the state statute without violating the Federal one, and an element of possible actual *conflict* was present which is absent here, for of course a restriction of employment to eight hours does not in any ordinary sense violate the statute against employment in excess of nine hours.

Other cases seem to me to lay down the rule in more liberal terms in favor of the state legislation.

In *Missouri, K. & T. Ry. Co.* v. *Haber* (169 U. S. 613) and in *Reid* v. *Colorado* (187 U. S. 137) the court had before it the question of alleged conflict between a Federal statute regulating the inspection, etc., of cattle for purposes of interstate shipment and state statutes relating to the same subject. Congress had adopted an act known as the "Animal Industry Act," which was designed to regulate and prevent the shipment of infected and diseased cattle and which went into the subject with much detail and completeness. Amongst other things it provided that for the purposes of the act "splenetic or Texas fever should not be considered a con-

tagious, infectious or communicable disease," and apparently it was broad enough to authorize a certificate by Federal officials that cattle were free from any disease. Notwithstanding this, the court held in the first case that the state statute was valid which permitted one of its citizens to recover damages sustained by communication to his animals of Texas or splenetic fever by cattle being transported in accordance with the Federal statute, and in the last case upheld a statute making it a criminal offense under certain conditions to bring into the state animals without a certificate by state authorities that they were free from disease. It will be observed that in the first case a recovery was had under the state statute on the theory that Texas or splenetic fever was communicable, which was expressly negatived by the Federal statute.

Mr. Justice HARLAN wrote in each case. In the first one he expressly approved as settled law the rule enunciated in *Sinnot* v. *Davenport* (22 How. [U. S.] 227, 243), and stated " that a statute enacted in execution of the reserved power of the state is not to be regarded as inconsistent with an act of Congress passed in the execution of a clear power under the constitution, unless the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or stand together." In the latter case he wrote : " It should never be held that Congress intends to supersede or by its legislation suspend the exercise of the police powers of the states, even when it may do so, unless its purpose to effect that result is clearly manifested " (p. 148), and again cited with approval *Sinnot* v. *Davenport.*

In *Smith* v. *Alabama* (124 U. S. 465) the court passed upon the validity of the statute of Alabama requiring engineers to undergo an examination and obtain a license from a state board of examiners. The point was made that the statute in its application to engineers on interstate trains was a regulation of commerce among the states and repugnant to the Constitution. This contention was overruled and the statute held to be a proper exercise of the police power in the absence of national legislation which prevented it. Speaking

upon this subject it was said, referring to the fact that Congress had prescribed the qualifications for pilots and engineers of steam vessels engaged in the coasting trade and navigating the inland waters of the United States while engaged in commerce among the states, that the power of Congress " might, with equal authority be exercised in prescribing the qualifications for locomotive engineers employed by railroad companies engaged in the transportation of passengers and goods among the States, and in that case would supersede any *conflicting* provisions on the same subject made by local authority. But the provisions on the subject contained in the statute of Alabama under consideration are not regulations of interstate commerce. * * * Considered in themselves, they are parts of that body of the local law which, as we have already seen, properly governs the relation between carriers of passengers and merchandise and the public who employ them which are not displaced until they come in *conflict* with express enactments of Congress in the exercise of its power over commerce, and which, until so displaced, according to the evident intention of Congress, remain as the law governing carriers in the discharge of their obligations, whether engaged in the purely internal commerce of the State or in commerce among the States." (p. 479.) (See, also, *Hennington* v. *Georgia*, 163 U. S. 299; *Gladson* v. *Minn.*, 166 U. S. 427.)

It would seem to me that within the authority of these cases and of what was said in deciding them as above quoted, it may be held that where Congress has prescribed a general minimum limit of safety applicable to average conditions throughout the country in the movement of interstate traffic, a state statute does not trespass upon forbidden territory and become obnoxious because, in response to special conditions prevailing within its limits, it has raised such limit of safety. There is no conflict; the state has simply supplemented the action of the Federal authorities. It is the same as if Congress had enacted that the classes of employees named might be employed for nine hours or less, and the state had then fixed

the lesser number, which was left open by the Federal statute. The form of the latter fixing the outside limit, but not expressly legalizing employment up to that limit, fairly seems to have invited and to have left the subject open for supplemental State legislation if necessary. Such is the view which this court has taken on another occasion in the decision of a question quite identical with that here presented.

The case of *Fitch* v. *Livingston* (4 Sandf. 492) was brought on a bond given for the purpose of discharging a vessel which had been attached as the result of a collision occurring in the Hudson river. The question involved in the action pertained to the negligent management of the vessel for which the bond had been given, and this alleged negligence consisted in non-compliance with the statute of the state requiring such a boat in the night time to carry and show two lights, one at the bow and the other at the stern. The offending vessel was engaged in interstate business, and the court said : "The great point of the defense is, that the propeller was not bound to carry more than one light, because she was a vessel owned in another state, navigating a river subject to the jurisdiction of Congress, under a national enrollment and license. The act of Congress of July 7, 1838, * * * makes it the duty of the master and owner of every steamboat running between sunset and sunrise to carry *one or more* signal lights," and the court discussed at considerable length and with much care the question whether a Federal statute requiring a boat to show at least one light barred the state statute requiring it to show two lights, and it was held "that the addition of a further qualification, is not in direct collision with a law prescribing the first qualification. The act of Congress does not provide that it shall be sufficient for a steamboat navigating at night to be equipped with one light only, or that, if so equipped, she shall be at liberty to navigate in all waters, whether inland or on the coast. * * * The act of Congress of 1838 requires certain safeguards to be observed by steamboats; one of which is, that they shall show at night at least one light. A state, finding those safeguards insufficient,

within its waters, adds others which are necessary to preserve life and property. There is no direct conflict."

The judgment in this case, although not reported, was subsequently affirmed by this court without opinion (Jany. 14, 1853).

Furthermore, when a libel springing out of this same collision came before the Circuit Court of the United States for consideration (*The Santa Claus*, 21 Fed. Cases, 406) the court took into consideration the fact that the vessel engaged in interstate travel did not show two lights notwithstanding that the Federal statute only required one. While this view was predicated on common-law principles instead of on the state statute referred to, it would seem indirectly to be authority for the proposition that the state statute in accordance with the rules of safety and necessity requiring two lights would have been held valid notwithstanding the Federal statute.

We do not, of course, overlook the fact that the court of last resort in four of our sister states upon the precise question here involved has adopted a different conclusion than the one we are reaching (*State* v. *Chicago, M. & S. P. Ry. Co.*, 117 N. W. Rep. 686 ; *State* v. *Mo. Pac. Ry. Co.*, 111 S. W. Rep. 500 ; *State* v. *Texas & N. O. Ry. Co.*, 124 S. W. Rep. 984 ; *State* v. *No. Pac. Ry. Co.*, 93 Pac. Rep. 945), but necessarily in the absence of what we regard as adverse controlling authority of the Supreme Court of the United States we follow the views of our own court as above cited.

It has been urged, and in one or more of the decisions of other states cited above, it was held that at least the provisions of the State statute would be controlling during the period elapsing between the date of the enactment of the Federal statute and the date, a year later, when it took effect, and in this connection it is pointed out that the alleged violation of the state statute in this case took effect within the period mentioned.

It seems to me that this contention is well founded and sensible. The general rule is and necessarily must be that a statute does not become controlling until it actually becomes

operative. And it readily will be seen how unfortunate and paralyzing might be the results of any contrary doctrine in this case. From the passage by both Congress and state legislatures of legislation on this subject of hours of employment we must assume that it was a subject reasonably requiring legislative regulation in the interest of the public. Congress legislating for the entire country might have deemed it wise under all of the circumstances to allow two or even three years within which all of the different employers affected by its statute might prepare to comply with the requirements thereof. If the theory of the respondent is correct, no state within that time, however urgent or pressing the necessity and demand for prompt action under special conditions prevailing within its borders, might pass any law which would cover even this interval because general and average conditions throughout the country might be satisfied by such a statute becoming effective at some rather remote day in the future. I do not believe that such a result should be tolerated or adjudged under the facts of this case even though it should be decided that there was a conflict between the Federal and the state legislation after the former became effective.

These views were adopted in a well-reasoned opinion by the Supreme Court of Montana in *State* v. *Northern Pacific Railway Co.* (93 Pac. Rep. 945) although that court disagreed with us in the conclusions reached on the first branch of this case.

These views lead to a reversal of the order appealed from and to an affirmance of the judgment of the trial court, with costs in both courts.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, WERNER and WILLARD BARTLETT, JJ., concur; CHASE, J., absent.

Order reversed, etc.