UNITED STATES v. CHICAGO, M. & P. S. RY. CO.

(District Court, E. D. Washington, N. D. April 10, 1912.)

No. 1,206.

1. COMMERCE (§ 27*)—RAILROADS—HOURS OF SERVICE ACT—INTERSTATE COMMERCE—"EMPLOYED IN INTERSTATE COMMERCE."

Employés of a railroad company engaged in hauling freight from some intermediate point on its line to another point where it is taken up by regular trains for interstate shipment are "employed in interstate commerce" within the meaning of Act March 4, 1907, c. 2939, § 2, 34 Stat. 1416 (U. S. Comp. St. Supp. 1911, p. 1321), regulating the hours of service of employés.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, vol. 3, pp. 2377–2380; vol. 8, p. 7649.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MASTER AND SERVANT (§ 13*)—HOURS OF SERVICE ACT—CONSTRUCTION.
    Under Hours of Service Act of March 4, 1907, c. 2939, § 2, 34 Stat.
1416 (U. S. Comp. St. Supp. 1911, p. 1321), making it unlawful for any
interstate carrier subject to the act to require or permit an employé to
remain on duty for a longer period than "sixteen consecutive hours,"
the fact that brief times were given employés for meals, of no more than
an hour each, did not break the continuity of the service, nor did the
laying off of a train crew while waiting for a helper engine for an indef-
inite time, which proved to be about three hours.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14;
Dec. Dig. § 13.*]

Action to recover penalties by the United States against the Chi-
cago, Milwaukee & Puget Sound Railway Company. Judgment for
the United States.

Oscar Cain, U. S. Atty., and Roscoe F. Walter, Sp. Asst. U. S.
Atty.

F. M. Dudley and George W. Korte, for defendant.

RUDKIN, District Judge. The present suit was brought by the
United States District Attorney for this district to recover penalties
for the violation of section 2 of the Act of March 4, 1907, c. 2939,
34 Stat. 1416 (U. S. Comp. St. Supp. 1911, p. 1321), which reads
as follows:

"That it shall be unlawful for any common carrier, its officers or agents,
subject to this act to require or permit any employé subject to this act to be
or remain on duty for a longer period than sixteen consecutive hours, and
whenever any such employé of such common carrier shall have been continu-
ously on duty for sixteen hours he shall be relieved and not required or per-
mitted again to go on duty until he has had at least ten consecutive hours
off duty; and no such employé who has been on duty sixteen hours in the
aggregate in any twenty-four hour period shall be required or permitted to
continue or again go on duty without having had at least eight consecutive
hours off duty."

By the preceding section the carriers and employés subject to the
provisions of the act are common carriers, their officers, agents, and
employés, engaged in the transportation of passengers or property by
railroad in the District of Columbia, or any territory of the United
States, or from one state or territory of the United States, or the
District of Columbia, to any other state or territory of the United
States or the District of Columbia, or from any place in the United
States to an adjacent foreign country, or from any place in the United
States through a foreign country to any other place in the United
States.

The complaint contains 33 counts in all, to 17 of which the defend-
ant has entered a plea of guilty.

The first count charges that the defendant company is a common
carrier, engaged in interstate commerce by railroad in the state of
Washington; that on the 3d day of June, 1911, upon its line of rail-
road at and between the stations of Easton, in the state of Washing-
ton, and Keechelus, in said state, and within the jurisdiction of this
court, the defendant required and permitted one of its employés to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
    197 F.—40

be and remain on duty as such for a longer period than 16 consecutive hours, to wit, from the hour of 4:30 o'clock a. m. to the hour of 10:15 o'clock p. m.

.The second, third, fourth, and fifth counts are in all respects similar to the first, except they refer to other members of the same train crew.

The sixth count charges that the defendant company permitted and required its engineer to be and remain on duty for more than 16 consecutive hours, on the 3d day of June, 1911, as in the first count, and further charges that on the following day it permitted and required said employé to again go on duty as such engineer before he had had at least 10 consecutive hours off duty, as required by law.

The seventh, eighth, ninth, and tenth counts are in all respects similar to the sixth, except they refer to other members of the same train crew.

The twenty-second count charges that the defendant company, on the 16th day of June, 1911, required and permitted its certain engineer to be and remain on duty, as such, for a longer period than 16 consecutive hours, to wit, from the hour of 1:30 o'clock a. m. to the hour of 7:30 o'clock p. m.

The twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, and twenty-seventh counts are in all respects similar to the twenty-second, except they refer to other members of the same train crew.

[1] Two defenses have been interposed to the first five counts: First, a denial that the train on which the crew was employed was engaged in interstate commerce; and, second, a denial that the crew was employed for more than 16 consecutive hours. The facts on which these defenses are predicated are as follows:

The train in question was what is commonly known as an extra or work train, operating between the stations of Easton and Keechelus, in Kittitas county. The train crew was engaged in picking up logs along the right of way, loading them onto the cars and hauling the loaded cars to Whittier station in Kittitas county, where they were taken up by one of the defendant's regular trains and transported to St. Joe, in the state of Idaho.

The pay time of the crew commenced at 4:30 a. m., but the crew was not called until 5 a. m. The crew was allowed from 30 to 45 minutes for breakfast, and about 1 hour each for the midday and evening meals. At meal time the crew was relieved from duty and a watchman placed in charge of the train. If the time allowed for meals be deducted from the time of service, the crew was not employed for 16 consecutive hours; but, if these deductions be not made, it was admittedly employed for a longer period than allowed by law.

The foregoing facts, in my opinion, do not constitute a defense. It has been repeatedly held by the Supreme Court of the United States that, whenever a commodity has begun to move as an article of trade from one state to another, commerce in that commodity between the states has commenced, and that such commerce is subject in all respects to the paramount laws of the United States. Thus, in the case

of The Daniel Ball, 10 Wall. 557, 565 (19 L. Ed. 999), the court said:

"In this case it is admitted that the steamer was engaged in shipping and transporting down Grand river goods destined and marked for other states than Michigan, and in receiving and transporting up the river goods brought within the state from without its limits; but inasmuch as her agency in the transportation was entirely within the limits of the state, and she did not run in connection with, or in continuation of, any line of vessels or railway leading to other states, it is contended that she was engaged entirely in domestic commerce. But this conclusion does not follow. So far as she was employed in transporting goods destined for other states, or goods brought from without the limits of Michigan and destined for places within that state, she was engaged in commerce between the states, and however limited that commerce may have been, she was, so far as it went, subject to the legislation of Congress. She was employed as an instrument of that commerce; for, whenever a commodity has begun to move as an article of trade from one state to another, commerce in that commodity between the states has commenced. The fact that several different and independent agencies are employed in transporting the commodity, some acting entirely in one state, and some acting through two or more states, does in no respect affect the character of the transaction. To the extent in which each agency acts in that transportation, it is subject to the regulation of Congress."

The doctrine of this case has been repeatedly recognized and approved in later decisions of the Supreme Court. See Coe v. Errol, 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715; Wabash, etc., Ry. v. Illinois, 118 U. S. 557, 7 Sup. Ct. 4, 30 L. Ed. 244; Kidd v. Pearson, 128 U. S. 25, 9 Sup. Ct. 6, 32 L. Ed. 346; Louisville, etc., Ry. Co. v. Mississippi, 133 U. S. 587, 10 Sup. Ct. 348, 33 L. Ed. 784; Norfolk, etc., Ry. Co. v. Pennsylvania, 136 U. S. 114, 10 Sup. Ct. 958, 34 L. Ed. 394. See, also, Cutting v. Florida Ry. & Nav. Company (C. C.) 46 Fed. 641.

Within this rule, employés of a railway company, engaged in hauling freight, from some intermediate point on the railway line to another point where it is taken up by the regular trains for interstate shipment, are "employed in interstate commerce," and the railway company itself is engaged in interstate commerce.

[2] Nor should the brief periods allowed for meals be deducted from the time of service, in order to break its continuity. The statute uses the terms, "sixteen consecutive hours," and "continuously on duty"; and while, literally speaking, "consecutive" means succeeding one another in regular order, with no interval or break, and the word "continuously" means substantially the same, yet it is manifest that no such strict or literal meaning of these expressions was intended. The purpose of the statute, as indicated by its title, is to promote the safety of employés and travelers upon railroads, by limiting the hours of labor of those who are in control of dangerous agencies, lest by excessive periods of duty they become fatigued and indifferent, and cause accidents leading to injuries and destruction of life. New York v. Erie R. Co., 198 N. Y. 369, 91 N. E. 849, 29 L. R. A. (N. S.) 240, 139 Am. St. Rep. 828, 19 Ann. Cas. 811.

And while the statute is penal in its nature, it is in some aspects remedial and should be so construed as to promote the apparent policy and object of the Legislature, and not entirely defeat its purpose.

Johnson v. Southern Pacific Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363.

Thus, in United States v. St. Louis S. W. Ry. Co. of Texas (D. C.) 189 Fed. 954, it was held that an office which was closed four times a day, for a period of one hour each, was continuously operated night and day, within the meaning of the proviso to the section now under consideration. And in the case of United States v. Atchison, T. & S. F. Ry. Co., 220 U. S. 37, 31 Sup. Ct. 362, 55 L. Ed. 361, the court rather intimated that a station closed for two periods of three hours each day was operated continuously night and day, within the meaning of the same proviso. In the course of its opinion in the case last cited the court said:

"A trifling interruption would not be considered, and it is possible that even three hours by night and three hours by day would not exclude the office from all operation of the law, and to that extent defeat what we believe was its intent."

I cannot believe that by the expressions, "sixteen consecutive hours," and "continuously on duty," Congress intended to include only those who are employed for 16 hours, without interruption for meals or otherwise. Congress was no doubt mindful of the fact that no laboring man works for 16 consecutive hours, or is on duty continuously for that period, without food or drink, except in cases of dire necessity, and the act should not be so restricted. It may be said that trainmen are on duty and subject to call during meal hours, but this is only because such is the will of their employers. If a railroad company may relieve its employés from service during meal hours, it may also relieve them from service every time a freight train is tied up on a side track waiting for another train, and thus defeat the very object the Legislature had in view. The brief interruptions for meals were "trifling interruptions," in the language of the court in the Atchison Case, supra.

For these reasons I adjudge the defendant guilty on the first five counts, and if these men were employed more than 16 consecutive hours on the 3d day of June, 1911, they were admittedly permitted and required to again go on duty on the following day before they had had at least 10 consecutive hours off duty. As to the sixth, seventh, eighth, ninth, and tenth counts the defendant is also adjudged guilty.

The facts in relation to the twenty-second and five succeeding counts are as follows: The train crew in question ran from Seattle to Laconia, and on the 16th day of June, 1911, left the former station at about 1:30 a. m. At some point on the line they were to be met by a helper to assist them up the mountain grade. They arrived at the point where the helper was to join them at 9:55 a. m. Upon their arrival there the helper was delayed for some cause, and the trainmaster or some officer of the railway company immediately relieved the crew from duty until the helper should arrive. This, as it afterwards transpired, was a period of about three hours, or not until 1 o'clock p. m. The crew then proceeded upon its way and arrived at its destination at about 7:25 p. m. If the three hours lay-

off is deducted from the time of service, the crew was not employed for 16 consecutive hours; but, if not so deducted, the time of service exceeded that limited by law. If this crew had been laid off for a definite period of three hours at a terminal or other place where the crew might rest, such lay-off would no doubt break the continuity of the service. Atchison Case, supra. But such was not the case here. The crew was laid off for an indefinite period, awaiting the arrival of a delayed engine. They did not know at what moment the train might move, and had no place to go except to a bunk house, or remain in the caboose. They chose the latter course. This, in my opinion, was a trifling interruption.

The facts in this case demonstrate the absurdity of the company's claim. According to its view of the law, it may work its employés for the full period of 16 hours, allow them two hours and forty-five minutes off for their meals, lay them off for 3 hours at a siding in the mountains to wait for a helper, and thus leave them two hours and 15 minutes for sleep and recreation. Such a policy would illy protect the safety of either the employés or the traveling public. I therefore adjudge the defendant guilty as to these six counts also.

The only remaining question is the penalty to be imposed. This is the first prosecution against the defendant in this district, and some of the questions presented are not free from doubt and difficulty. A claim for the statutory penalty is made for each member of the train crew. In view of all these facts, I will impose a penalty of $100 as to each count, or an aggregate penalty of $3,300 and costs. This I deem a sufficient punishment for the wrong committed, and trust it will prove sufficient to deter the company and its officers from further violations of the law.

Let a judgment be entered accordingly.