## McCune v. The B., C. R. & N. R. Co.

1. **Railroads**: COMMON CARRIERS: CONTRACT LIMITING LIABILITY. A regulation of a railway company to the effect that no valuable live stock shall be received for shipment until a contract is signed by the owner, releasing the company from all liability for injury to such stock in shipment, above the value of ordinary stock, is void, under section 1308 of the Code.

2. ——: ——: NEGLIGENCE. The failure of the owner of stock shipped to inform the agent of the carrier that the physical condition of the animals renders extraordinary care necessary in their handling, will not release the carrier from liability for negligence causing injury to the stock.

*Appeal from Johnson District Court.*

WEDNESDAY, DECEMBER 10.

ACTION to recover damages alleged to have been sustained by plaintiff by reason of the negligence of the defendant's employes in the management of one of its railroad trains, whereby a valuable cow, the property of plaintiff, and which defendant was carrying for him, was greatly injured. There was a trial by jury, and a verdict and judgment for the plaintiff. Defendant appeals.

*J. & S. K. Tracy,* for appellant.

*Boal & Jackson,* for appellee.

ROTHROCK, J.—I. The plaintiff's cow was shipped, with other cattle belonging to the plaintiff, over the defendant's

1. RAILROADS: common carrier: contract limiting liability.

road from Solon to Iowa City. While *en route* the cow was injured, as is claimed, by the negligence of defendant's train-men in permitting the

car in which the cattle were placed to run down its track and switch without break or control, and against other cars with great force. The animal in question was alleged to be an imported, thorough-bred Short-horn, seven months with calf. It is claimed that the injury she received caused her to lose her calf.

The defendant offered to prove that it and the other railway companies in this State, by uniform custom and general practice, do not, and never have, held themselves out to the public as common carriers of live stock of the description of the cow in question. It also offered to prove that plaintiff had frequently before that shipped blooded cattle upon the defendant's road, and made contracts of shipment which were understood by plaintiff as limited by these words, therein contained: "This company will assume no liability over one hundred dollars on valuable live stock, except by special agreement. Agents are not allowed to receive and ship such valuable animals until a proper contract or release is signed by the owner or shipper thereof;" and also this limitation, in writing: "This railway is released from any liability above the value of common stock;" that said contracts were signed by the plaintiff. It was not claimed that the plaintiff signed such contract for this particular shipment, but that the cattle were received and transported under the same arrangement, and with the same understanding, as upon previous occasions, and that the reason the contract was not signed by plaintiff was that the agent could not find the plaintiff, he having left defendant's office hurriedly and inadvertently, without signing the same. All of the offered evidence was excluded, and the court instructed the jury that the defendant was, under the law, bound to receive from plaintiff and transport for him the cow in question.

That there never has been any rule or regulation of the defendant, or other railroad company in this State, to the effect that blooded or thoroughbred cattle would not be shipped at all, is not claimed. The evidence which was excluded amounts to this: that the rule has been to receive all such stock, but to limit the liability to the value of common

stock, by a contract made with the shipper. The effect of such rule would be to fix all values by one uniform standard, which is the price and value of common stock.

The stock having been received for shipment and shipped, the defendant was liable as a common carrier for all damages which were occasioned by the negligence of its servants and employes. When the cause of the damage for which recompense is sought is unconnected with the peculiar character of that class of freight, the ordinary responsibility of the common carrier should attach. *McCoy v. K. & D. M. R. Co.*, 44 Iowa, 424. The contract, rule or custom sought to be established is, therefore, void under section 1308 of the Code, which provides that: " No contract, receipt, rule or regulation shall exempt any corporation, engaged in transporting persons or property by railway, from liability of a common carrier or carrier of passengers, which would exist had no contract, receipt, rule or regulation been made or entered into."

The rights of the parties are precisely the same under this statute as though no rule, custom or contract existed, and the court properly refused to admit the offered evidence, and correctly instructed the jury that the defendant, as a common carrier of live stock, was bound to receive and ship the cow in question.

It is argued that the value of high-bred cattle is not fixed and determinate, but is purely fanciful, and that there is no obligation upon the carrier to carry this particular class of stock, not in use for commercial purposes, and that, therefore, the rules, custom and contract limiting liability are just and reasonable. But it will not do to say that the value of all cattle is the same, and that they are worth so much per pound. The fact that there is not so general a market for high-bred cattle as there is for common stock is not a criterion by which it may be said that the one is as valuable as the other. The value of a thing is what it will ordinarily sell for to persons who are accustomed to dealing in that class of property, and who desire to purchase. Such a rule would be wholly impracticable in its application, besides, as we have found, it is in direct conflict with the statute.

II. The defendant asked the court to instruct the jury "that it was the duty of the plaintiff to inform the defendant's agent at Solon of the condition of the cow; that is, that she was about eight months gone with calf when he delivered her for shipment, and his failure to do so, if such is the fact, constitutes negligence or want of due care on plaintiff's part, and defeats his right of recovery in this action." This instruction was refused, and the court, on its own motion, instructed the jury to the effect that it was the right of defendant's agent, when the cow was offered for shipment, to make any inquiries as to her physical condition, and if, upon such inquiry being made, the plaintiff concealed her condition, and thus prevented defendant from exercising greater care, then the plaintiff could not recover.

2. ——: ——: negligence.

The rule of the instruction which was given we believe to be correct. It cannot be said that when the cow was offered for shipment there was a fraudulent concealment of her condition, by the neglect of the plaintiff to inform the agent of the defendant that she was eight months with calf. The plaintiff may well have supposed that her condition was apparent to every one, and unless he did some positive act, or made some statement by which the agent of the defendant, on inquiry being made, was misled, we do not think the defendant should be absolved from all liability from negligence in transporting the cow. The court instructed the jury that if the peculiar condition of the cow in question, "owing to her near approach to the delivery of the calf, according to the course of nature, was the direct or proximate cause of the injury complained of, and the colliding of the cars the remote or indirect cause of her miscarriage and consequent unproductiveness, the plaintiff cannot recover."

We think that this was as favorable a rule, under the circumstances, as the defendant had the right to ask. It would certainly be most unreasonable to require shippers of live stock to seek the agent of the carrier and make known the physical condition of his stock, and for failure to do this discharge the carrier from all liability for negligence. As well require each passenger, upon purchasing his ticket, or upon

boarding the train, to make known his physical condition, so that the carrier might exercise more care in running the train to avoid collisions, or accidents from other causes.

AFFIRMED.