WILLIAM ROGERS v. E. N. MORRILL, *as Governor of the State of Kansas.*—SAME v. O. L. MOORE.

1. STATE OFFICERS—*Investigation of Conduct.* The title of chapter 239, Laws of 1889, being "An act providing for the appointment of committees to investigate the affairs of state institutions and conduct of officers," is broad enough to cover legislation authorizing reports of such committees and making such reports effectual.

2. REGENT OF STATE UNIVERSITY—*Cause for Removal.* That a regent of the state university is and during his term of office has been addicted to the excessive use of intoxicating liquors, and his conduct and example detrimental to the best interests of the university, is sufficient cause for his removal under said chapter 239, Laws of 1889.

*Original Proceeding in Mandamus.*

MANDAMUS by William Rogers against E. N. Morrill; and *quo warranto* by William Rogers against O. L. Moore. Judgments for the defendants respectively.

47—55 KAS.

The statement of the cases, made by MARTIN, C. J., is as follows :

These cases were heard together, and both involve the title of William Rogers to the office of regent of the state university.     The action of *mandamus* was commenced June 6, 1895, for the purpose of compelling E. N. Morrill, as governor, to set aside and hold for naught his order of May 22, 1895, removing Mr. Rogers from the office of regent.     The second action was *quo warranto*, brought June 21, 1895, the petition being substantially the same as the alternative writ in the former case, with the additional allegation that O. L. Moore had been appointed in his place as regent by the governor on or about May 22, 1895, and asking that said O. L. Moore be required to show by what right and authority he held said office.     A motion was filed to quash the alternative writ of *mandamus*, and a general demurrer was interposed to the petition in *quo warranto*.

The proceedings resulting in the order of removal were under chapter 239, Laws of 1889, entitled, ''An act providing for the appointment of committees to investigate the affairs of state institutions and conduct of officers.''     This act authorizes the governor, lieutenant-governor, and speaker of the house of representatives, on charges filed with the governor, '' whereby the management or administration of the affairs of any charitable, educational, or penal institution, or the official conduct of any officer in charge of or otherwise connected with any of said institutions, shall be called into question upon the grounds of corruption, venality, inefficiency, misconduct, immorality, or inattention to duties,'' to appoint a committee, consisting of two senators and three representatives, to investigate and report upon the charges, after notice

to the accused officer; and upon filing their report, including the testimony, with the governor, with such recommendation as they may deem just and appropriate, the governor is empowered to dismiss from the public service or reinstate the officer, according to the finding and report of the committee. Charges were filed against Mr. Rogers, as regent, on March 22, 1895, embracing specifications, among others, of being guilty of drunkenness, and frequently under the influence of intoxicating liquors, using the same to excess, and that his conduct and example were detrimental to the best interests of the university, and very injurious to its welfare. A committee, consisting of K. E. Willcockson and A. S. Cooke, senators, and Alexander Warner, I. E. Lambert and J. F. Pancake, representatives, was appointed to investigate and report upon said charges, which they proceeded to do. Mr. Rogers appeared by his counsel, the late Hon. Solon O. Thacher, and filed a paper in the nature of a demurrer or challenge to the jurisdiction of the court, the points made being as follows, viz.:

"1. Chapter 239, Laws of 1889, by virtue of which this committee is appointed, only applies to the 'official conduct' of this respondent as regent of the state university, and all inquiries touching his life or character, his acts or words not in any manner connected with, or used, or employed or committed in the discharge of his duty as such regent, is not a subject of inquiry by any one.

"2. The charges before this honorable committee in no way assail or impugn a single official act of this respondent as regent, but each and every one of them relate to matters entirely disconnected with his conduct as regent. Not one of the charges is averred to touch any official act of this respondent, or to have been in the remotest manner done in the course of the discharge of his 'official duty.'

"3. This respondent is not .charged with either 'corruption, venality, inefficiency, misconduct, immorality, or inattention to duties in his official conduct;' the only subject of inquiry of this committee, as pointed out by the second section of said chapter 239, being the 'official conduct' of this respondent. And this respondent protests that his position or office as regent aforesaid cannot be questioned on any other or different ground. than that named in the statute; that for any act or word or thought not connected with the discharge of his 'official duty' as regent, he is not amenable to the provisions of said chapter 239."

Said challenge, in the nature of a demurrer, was overruled by the committee. On the completion of the investigation and on May 18, 1895, K. E. Willcockson, Alexander Warner, and I. E. Lambert, being a majority of the committee, made their report, the substantial part of which reads as follows:

"We find from the testimony (which is transmitted with this report) that the said William Rogers is and has been, since the commencement of his term of office as a member of the board of regents of the University of Kansas, addicted to the excessive use of intoxicating liquors.

"We further find that his conduct and the example he sets are detrimental to the best interests of the state university, and we recommend that he be removed."

The minority filed a report more favorable to Mr. Rogers. The governor, following the recommendation made in the majority report, removed Mr. Rogers, as regent, May 22, 1895, and then appointed said O. L. Moore in his place and stead.

*S. O. Thacher*, and *W. C. Webb*, for plaintiff.

*F. B. Dawes*, attorney general, for defendants.

The opinion of the court was delivered by

MARTIN, C. J.: I. It is contended that all that part of chapter 239, Laws of 1889, which purports to authorize the removal of an officer is in contravention of the first clause of § 16 of article 2 of the constitution, which reads: "No bill shall contain more than one subject, which shall be clearly expressed in its title." It is said that the title of this act authorizes only the appointment of committees of investigation of the affairs of state institutions and the conduct of officers, and does not include the power of removal. It will be observed from the statement of facts that this objection was not made before the investigating committee, but it is not too late to raise it now. We had before us the question of the sufficiency of the title of this act to justify removal in *Lynch v. Chase*, ante, p. 367, (40 Pac. Rep. 666, 668,) but did not find it necessary to decide it, because there was another statute under which the governor might act in removing a warden of the penitentiary. Mr. Justice JOHNSTON, delivering the unanimous opinion of the court, said :

"It has been repeatedly held that § 16 of article 2 of the constitution is not to be enforced in any narrow or technical spirit, but that a liberal interpretation should be placed upon the language employed in the title to express the subject of the act. The provision, as has been held, must be applied in a fair and reasonable way, so that it will not embarrass or defeat the proper and legitimate exercise of the legislative functions. It is not necessary that the title should be an abstract of the entire act, but it is deemed to be sufficient if the title fairly indicates, though in general terms, its scope and purposes. Everything connected with the main purpose and reasonably adapted to secure the objects indicated by the title may be embraced

in the act without violating the constitutional inhibition. The title in the present case, although somewhat restricted, provides for the creation of a tribunal to inquire into the affairs of state institutions and the conduct of officers. It clearly indicates that an investigation or hearing is to be had before this tribunal, and anything reasonably adapted to carry out that purpose may be fairly regarded as embraced within the title. Whether the title is sufficiently broad to justify a removal by the governor upon the coming in of the report of the committee is unnecessary to the disposition of the present case."

It was there held that the title was broad enough to include the authority of the committee to report to the governor, and we think it not unreasonable to say that it may also fairly include the right of the governor to act upon the report, and that a member of the legislature would not be deceived or misled by this title into the supposition that no legislation would be attempted under it looking to a report of the committee and making such report effectual, either by the action of the governor or otherwise. The main purpose of this clause of the constitution was to prevent surreptitious legislation, and we do not think that a provision of this nature for making the report of the committee effectual can truly be said to partake of such character. It is well settled that it is the duty of the courts to uphold legislation when they can do so without manifest violence to any constitutional principle, and that doubts should be resolved in favor of its validity, rather than against it; and by a liberal interpretation this legislation as to the power of removal may properly be said to be embraced within the title of the act.

II. The findings of the committee are included within the charge, though they are not so broad; but it is contended by counsel for the plaintiff that the

report does not show official misconduct. It appears therefrom that the plaintiff is, and has been since the commencement of his term of office as regent, addicted to the excessive use of intoxicating liquors, and that his conduct and example are detrimental to the best interests of the university. Webster defines "addicted" as follows: "Devoted by customary practice;" and he says of "addict" that it is "to apply one's self habitually; to devote time and attention by customary or constant practice." Worcester defines "addicted" as "accustomed; devoted to; habituated; abandoned to;" and the verb "addict" as follows: "To give one's self to; to devote; to apply; to habituate; to accustom."

Drunkenness is the result of addiction to the excessive use of intoxicants. To say that a man is "addicted to the excessive use of intoxicating liquors" is, therefore, substantially equivalent to a declaration that he is guilty of habitual intoxication or drunkenness. In this state it is a misdemeanor for any man to be drunk in any highway, street, or public place, or building, or even in his own house or a private building or place, disturbing his family or others. (¶ 2519, Gen. Stat. of 1889.) Certain officers may be removed from office for being in any public place in a state of intoxication produced by strong drink voluntarily taken, the same being expressly declared "an offense against the public morals;" (¶ 2468, Gen. Stat. of 1889;) and where drunkenness becomes habitual, and the inebriate is incapable of managing his affairs, he may be placed under guardianship in the same manner as a lunatic. (Gen. Stat. of 1889, ¶ ¶ 3677, *et seq.*) Habitual inebriety or drunkenness has been condemned as a great immorality in all ages of the world. The wise man has depicted in

graphic words the woes of the winebibber; (Prov., XXIII, 20, 21, 29–32;) and the apostle to the Gentiles has classed drunkenness with other great vices. (Gal., v, 19–21; I Cor., VI, 9, 10.)   It is asserted that the evidence does not show that the plaintiff was ever intoxicated, or suffering from the effects of inebriety while in the performance of his duties as regent.   We do not know how this may be, for the evidence is not embodied in the record, and we know nothing of the facts except as they appear from the report.   The finding, however, is that the conduct and example of the plaintiff are detrimental to the best interests of the university.   Inebriety is a vice that cannot well be hidden.   A regent might be drunk on the streets of Lawrence, but sober at the meetings of the board and while within the *campus* or the walls of the university, yet his example would be disgraceful and injurious.   In such case it is difficult to distinguish the conduct of the man from the conduct of the officer.   The finding would at least imply that the inebriety of the regent was of such notoriety and proximity as to constitute a bad example for the students and others connected with the university.   This is immorality in office, within the scope and intent of chapter 239, Laws of 1889.

The motion to quash the alternative writ in the first above-entitled case will be sustained, and the demurrer to the plaintiff's petition in the *quo warranto* case will also be sustained, and judgment will be entered for the defendants, respectively.

JOHNSTON, J., concurring.

ALLEN, J.:  I cannot concur in the decision of the case of *Rogers v. Moore*, nor in either proposition stated in the syllabus.   The title to this act is: "An act

providing for the appointment of committees to investigate the affairs of state institutions and conduct of officers.'' The constitution says that the subject of an act shall not only be expressed in its title, but it ''shall be clearly expressed.'' From apparent necessities arising in the cases that have been presented the word ''clearly'' has been very much obscured by former decisions of this court, if not entirely eclipsed; but, in my judgment, this decision expunges all necessity for expressing the subject in the title, or for its being included in it in any manner. It is a familiar rule that the greater includes the less, and in legislation it is undoubtedly competent to cover under a general and comprehensive title legislation not only as to minor and incidental particulars, but as to matters properly and directly connected with the main subject expressed in the title. But the less can never include the greater. The title to this act in terms covers only the appointment of committees to investigate. It does not even in express terms extend so far as to cover their action in making an investigation; but in the case of *Lynch v. Chase*, ante, p. 367, we held that the constitutional provision ought to be liberally construed, and stretched this title sufficiently to cover legislation authorizing them to investigate and report. This is the usual and ordinary scope of the powers of a legislative committee, and this might reasonably be expected to be found in an act under this title; but I am not aware of any instance in the legislation of this state, nor in fact, of any other state, where a legislative committee has been given the power to try and condemn a state official, and to make a report under which the governor acts perfunctorily only in making a removal, and merely carries out the will of the committee. Authority in the governor to remove from

office is the principal thing to be found in the provisions of the act under consideration. The appointment of the committee, the investigation, the report, are mere preliminaries incident to the main purpose of the act, which is the removal of the officer. Of the purpose to confer any such power there is no hint or intimation in the title, or in the customs of legislative bodies in making investigations by committees. Power to remove the warden of the penitentiary is conferred on the governor in express terms in the very act providing for the appointment. Provisions for the removal of state officials by impeachment and by joint resolution are made in the constitution. The decision in the case of *Lynch v. Chase*, supra, was rested on the statute, which in express terms vested power in the governor to remove, and not on the act of 1889.

Nor do I think the proceedings in this case show a compliance with the statute under consideration. The charges, in order to form a basis for any proceedings under this statute, must be such as affect the official conduct of the officer. The provision contained in § 1 of the statute authorizing an investigation is as follows :

"Whenever charges shall be made by any person or persons, and circulated within the state or presented by such person or persons in writing to the governor at any time when the legislature is not in session, and said charges shall be deemed worthy of credit, or emanating from a reliable and trustworthy source, whereby the management or administration of the affairs of any charitable, educational or penal institution, or the official conduct of any officer in charge of or otherwise connected with any of said institutions, shall be called into question upon the grounds of corruption, venality, inefficiency, misconduct, immorality, or inattention to duties, an investi-

gation shall be had as provided for in the second section of this act.''

Nowhere in the statute is there any provision for an investigation into the private character or the unofficial acts of any person holding a public office, nor is it consistent with reason or public policy that such investigations should be authorized. If this be the rule, no person in a public office can ever be secure against the malice of enemies, or the jealousy and animosity of political rivals. If personal venality, inefficiency, misconduct, immorality and inattention to private duties may be investigated, who so pure and free from blemish that, when his conduct is viewed through the eyes of partizan political adversaries, ample cause will not be found for blasting his character, and dismissing him in disgrace from the public service? The people of the state are indeed fortunate when they secure men to administer their public affairs whose public acts are above reproach. If private conduct is to be made the basis of investigations, no courageous public official who boldly defies the crowd of greedy cormorants which always hovers about the public treasuries can ever be safe. No one but him who will sacrifice the interests of the public to appease those who under one guise or another rob the people can ever be safe from attack if investigations are not to be confined to official conduct as alone authorized by the statute, but are to be extended to include all conduct of an officer, whether in any manner connected with his office or not. If so, the doings which may be investigated under the act of 1889 would include substantially every private peccadillo incident to human weakness. If the statute were to require that the officers who select the committee of investigation and the members

of that committee should, before they are permitted to cast, not a stone, but mud, first see that their own garments are strictly white and spotless, and much more, if no one was permitted to make complaint on which to base an investigation unless he himself were free from all taint similar to the charges he makes, there would be little danger that an investigation ever would be held. However much we may desire that men should be strictly pure and upright, both in their public acts and in the private walks of life, we all know that every mortal partakes, in some degree at least, of human frailty and imperfection. The legislature, therefore, has wisely confined the range of investigation to the official acts of the person charged, and this has generally if not always been considered as the only legitimate scope of investigation. Of course, the commission of crime for which a party is subject to ignominious punishment is a public offense, for which a person may be removed from office, and provision therefor is made by law. Under a very similar statute, the supreme court of Kentucky, in the case of *Commonwealth v. Williams*, 79 Ky. 42, said:

"The second constitution of this state provided that clerks should be removable from office by the court of appeals for breach of good behavior. In proceeding under that provision, this court held that the inquiry must be confined to misconduct in office, and that conduct, however immoral, which did not relate to the official action of the clerk, constituted no ground for his removal. (*Commonwealth v. Barry*, Hardin, 238; *Commonwealth v. Chambers*, 1 J. J. Marsh, 160.) In the latter case, the court said, it was 'proper to separate the character of the man from the character of the officer,' and that it had 'no power to remove a clerk for crimes committed so long as he discharged the duties of his office well.' In this case no complaint is made that the appellee did not faith-

fully, honestly, and correctly discharge all his duties as an officer. There was, therefore, no misconduct as an officer on his part, however reprehensible his conduct as an individual may have been. It is only for misconduct in connection with his official duties that the constitution authorizes him to be removed from office upon an indictment, and, as the only misconduct charged was individual and personal, and not official in its character, the judgment must be affirmed."

See, also, *Ledbetter v. The State*, 10 Ala. 241. It is well settled also that misconduct prior to the election or appointment of one to an office does not furnish ground for an investigation or removal. (*The State v. Jersey City*, 25 N. J. Law, 536; *Commonwealth v. Shaver*, 3 Watts & S. 338.)

The specifications in this case, so far as they are explicit, charge William Rogers with keeping intoxicating liquors in his committee-room while a member of the state senate, and drinking to excess, and with having been drunk at the Chesterfield hotel in Topeka. Nowhere is there a charge which, by the most liberal construction, accuses him of being drunk when he was in fact or ought to have been attending to any duty as regent of the university, nor is it claimed that there was any proof of that kind. On the contrary, it is alleged in his behalf, and not denied, that the proof was full and uncontradicted, showing that he was always a most efficient member of the board, and was never at any time intoxicated while attending to his duties. The findings on which the action of the governor were based are signed only by those members of the committee opposed to him politically, and even their finding utterly fails to convict him of drunkenness at any time, or in any place. The utmost reach is that he "is, and has been since the

commencement of his term of office as a member of the board of regents of the University of Kansas, addicted to the excessive use of intoxicating liquors.'' This is not a finding either that he is guilty of habitual drunkenness, or that he was ever drunk at all. People differ very greatly in their judgment as to what is excessive use of alcoholic stimulants. Some regard the least use as excessive. Others regard stimulants as having a proper place in materia medica, and to be taken only as poisonous drugs and powerful medicines are to be used. From these views others are entertained, varying all the way to those requiring a dram of whisky with each meal and an occasional one between times. To leave to a legislative committee the task of determining just where the line of excessive use is to be drawn short of drunkenness would be hazardous indeed where political adversaries are to be placed on trial before them. But the statute in this case has not authorized the trial of any such question by any such committee, either in direct terms or by any necessary implication.

The following observations of that eminent lawyer, the late Judge Solon O. Thacher, in his very able brief in this case upon this point, seem to me eminently sound and just:

'' Where shall we draw the line if anything an irresponsible, fugitive committee chooses to call ' excessive use ' is to justify an officer's removal from office? We must needs come back to the plain letter of the statute and say the law deals alone with what a man does in the line of his official duty. If that conduct is ' corrupt, venal, inefficient, immoral, or neglectful,' and the charges cover specifically the acts constituting official misconduct, and on such charges he is found guilty, then and not until then is he subject to removal. If any other standard is set up, then the

whim of a committee, and the malice, spite or vagary of a private prosecutor takes the place of the safeguards thrown around a man's official position, his good name and peace of mind, by both statute and deliberate judicial decrees. There is no finding that Senator Rogers was ever intoxicated since he became a regent, or that he uses liquor while discharging his official duties."