PECOS & N. T. RY. CO. et al. v. BITTING et al.

(Court of Civil Appeals of Texas. San Antonio. June 14, 1911. On Motion for Rehearing, Oct. 11, 1911. Rehearing Denied, Nov. 8, 1911.)

On Rehearing.

APPEAL AND ERROR (§ 1129*)—ASSIGNMENTS OF ERROR—WAIVER.

Where the only assignments of error upon which an error could be sustained are waived by the parties to an appeal, an affirmance must necessarily follow.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1129.*]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Action by S. T. Bitting and another against the Pecos & Northern Texas Railway Company and others. Judgment for plaintiffs, and defendants appeal. Affirmed on rehearing.

Terry, Cavin & Mills, Madden, Trulove & Kimbrough, and Carl Gilliland, for appellants. Hendricks & Boyce, for appellees.

FLY, J. This suit was instituted by S. T. Bitting and V. P. Jamison to recover damages of the Eastern Railway Company of New Mexico, the Pecos & Northern Texas Railway Company, the Southern Kansas Railway Company of Texas, and the Atchison, Topeka & Santa Fé Railway Company, which companies, it was alleged, were operating in common a continuous line of railway from Carsbad, N. M., through Texas and Oklahoma, and to Toronto, in the state of Kansas, and were partners under the Santa Fé System. The suit is based upon the negligence of the railway companies in connection with two shipments of cattle from Carlsbad, N. M., to Toronto, Kan., on April 20 and 21, 1909; and the negligence was alleged to have consisted in a failure to place a sufficient amount and the kind of sand in the bottoms of the cars for bedding purposes that was required, in delays at Carlsbad and at different points on the route, in handling the trains so violently and roughly that the cattle were jammed together and thrown upon the floors and many crippled and some killed, and in not furnishing proper facilities for feeding and watering the cattle. The sum of $11,200 was claimed; $8,588 for 390 cattle killed, $2,452.50 for injuries inflicted on 981 cattle, and $160.50 for "extra expense for feed and hire of men." The jury returned a verdict for $5,100, with 6 per cent. interest from April 21, 1909; the total sum being $5,431.50, for which judgment was rendered.

The second assignment of error complains of the second paragraph of the charge of the court, which instructed the jury that it is the duty of a railway company, when it accepts live stock for transportation, "to exercise ordinary care in the handling and operation of its cars in which said live stock are riding, so as to avoid injury to such stock, and also to exercise ordinary care to convey the same to their place of destination within a reasonable time, in view of the character of the shipment and its liability to injury on account of negligence, either in the handling or the time of the transportation thereof." The objections are that the charge should have been qualified by requiring that the carriers "should be notified of anything unusual or peculiar in the cattle, in order to charge them with a duty in view of the character of the shipment and its liability to injury." It is clear that the meaning of the charge was that the railroads should have exercised ordinary care in the handling and operation of its trains as applied to live stock, as contradistinguished from other classes of freight, such, for instance, as hardware, bricks, or dry goods. What would be ordinary care as to a shipment of corn or wheat might not be ordinary care as to a shipment of perishable fruit or vegetables. And, if the live stock should be in such condition as to require peculiar care and treatment, such care and treatment would be demanded in the exercise of ordinary care; and if such condition is apparent no notice of it is required. Railway v. Estill, 147 U. S. 591, 13 Sup. Ct. 444, 37 L. Ed. 292; McCune v. Railroad, 52 Iowa, 600, 3 N. W. 615; Railway v. Fagan (Tex. Civ. App.) 27 S. W. 887. There can be no doubt that appellants knew that they were shipping cattle, and if the testimony of their agents and employés is to be credited they knew the cattle were very poor and weak, and consequently required, in the exercise of ordinary care, more careful handling than would be required in the transportation of healthy, strong cattle. However, in this case no damages were claimed on account of the peculiar condition of the cattle, and the court merely required such ordinary care as is demanded in the handling of live stock, without reference to their weak and impoverished condition. If appellants deemed it necessary to amplify the charge, so as to inform the jury that no peculiar care could be demanded on account of the feeble and impoverished condition of the cattle, because not claimed in the petition, they should have prepared a charge to that effect.

It was alleged in the petition "that the defendants negligently failed to furnish proper facilities for feeding and watering said cattle at Canadian; that there was no water provided for the cattle in the pens at said place; and that the owners of said cattle were compelled to drive the cattle to water during said delay for about one mile and return." There was evidence to sustain the allegation, and, in view of the allegations and evidence,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

we must overrule the proposition under the third assignment of error that "the court erred in submitting the issue as to whether appellants were negligent in providing facilities for feeding and watering the cattle at Canadian; no such issue being made by the pleading and the evidence." Appellants should not have permitted the cattle to be unloaded for food and water at Canadian, if they had no facilities for watering them, without informing the owners that there were no facilities for watering at that place. If, through their delay, they created a necessity for feeding and watering at that point, they will be liable for all damages accruing by reason of a failure to have proper facilities for watering and feeding. Railroads are no required to have facilities at every station for watering and feeding cattle, but they are responsible for the damages arising from a lack of facilities at a place where their negligence has created an imperative necessity for such watering and feeding. If they should negligently stop a cattle train at a station where they have no facilities for feeding and watering cattle until the well-being and existence of the cattle make it necessary to feed and water them, and the owner seeks to save the cattle by unloading and driving them to water, they cannot escape the results of their negligence by the plea that they had other stations where cattle could be fed and watered, and that they were not compelled to have such facilities at every station. If they created a necessity for the watering and feeding of the cattle, they must respond for the damages inflicted on the cattle by a failure to have the facilities.

It was alleged in the petition that the cattle were placed in cars "improperly bedded, an insufficient amount of sand for proper transportation having been placed in said cars, and the sand placed therein being dry drift sand, which is improper for bedding by reason of the fact that it is readily blown away in case of wind; that on account of a strong wind blowing at said time the sand was blown out of said cars, causing the cattle to stand and ride upon the wooden floors, and the said defendants negligently failed to resand said cars." It was proved that the cars were not well bedded, and the result was that cattle would slip on the floors, and would fall and be injured. The evidence showed that it was the duty of appellees to bed the cars, and the court so instructed the jury, but in addition charged the jury: "But if you should find and believe from the evidence that the defendants assumed the duty of bedding the cars, and you should further find that said cars in which the first shipment was made from Carlsbad were insufficiently bedded, and that the insufficiency of such bedding was due to the negligence of the defendants, their agents, servants, and employés, and that injury to plaintiffs' cattle resulted therefrom, then you will find for plaintiffs for such damages as you may find resulted from the insufficient bedding of the cars," etc. There was no evidence that tended to show that appellants assumed the duty of bedding the cars. The man who attended to the bedding of the cars was an employé of appellees, and accompanied one of the shipments. He testified: "I sanded the cars for these shipments." Under these circumstances, it was error for the court to present an issue as to appellants assuming the duty of bedding the cars, and it was an error that may have exerted much influence on the jury in arriving at a verdict. There was no evidence tending to show that it was the duty of appellants to replace the sand in the cars when it was blown out by the wind, and that matter should not have been interpolated into the case.

There is no merit in the fifth assignment of error. The criticized paragraph of the charge must be read and construed in connection with other portions of the charge, of which special mention is made in that paragraph, and when that is done the criticism has no force. The charge is plain, is not uncertain or obscure, and is not elliptical, as claimed by appellants.

The sixth and seventh assignments are overruled. The court had fully instructed the jury, unless it appeared from the evidence that appellants had been guilty of negligence as alleged, and that the negligence had resulted in damage to appellees, they should find for appellants, and it was useless to repeat it, through the special requested charges. The court charged the jury: "Although you may find that the defendants were guilty of negligence in any of the matters given you in charge, if you further find that plaintiffs' cattle, when offered for shipment, were poor and weak, and that the deaths and injuries, if any, would have resulted on this account, even if the defendants had not been guilty of such negligence, or if any part of such injuries would have so resulted under such circumstances, then as to the damages that would have resulted to plaintiffs' cattle, even if the defendants had not been guilty of negligence, you will find against plaintiffs." That paragraph of the charge clearly and fully presented the issue as to what was the proximate cause of the death of the cattle, and the court did not err in refusing to give charges requested by appellants.

The seventeenth assignment of error is overruled. The answer of the witness was responsive to the question asked, and was properly admitted. If a train is jerked and bumped and handled roughly, a witness swearing to it would be giving facts, not an opinion. That was about the only way to prove those facts. Railway v. Wesch, 85 Tex. 593, 22 S. W. 957; San Antonio Traction Co. v. Flory, 45 Tex. Civ. App. 233, 100 S. W. 200.

The testimony objected to through the eighteenth assignment of error was responsive to the question. That the answer was not responsive was the only objection urged. The nineteenth assignment presents an objection to certain testimony similar to that discussed in connection with the seventeenth assignment of error, and it is overruled.

Appellants asked the witness Vest, whose evidence was taken by deposition, on cross-examination, if it was not a fact that some of the cattle got down in the pens and in the chutes before they were put on the cars, and if the cattle were not poor and thin and starved and hardly able to stand up before they were put on the cars, and if the ordinary jolting of a train would not throw them down. He answered: "None of the cattle that were loaded got down that I know of. There might have been some hooked down; but there didn't any of them get down on account of being thin." The answer was evasive, and was not responsive to the interrogatory, and should have been stricken out, as was requested by appellants.

The statement under the twentieth assignment of error assails the action of the court in admitting certain testimony, while the four propositions thereunder attack four different interrogatories, as well as the answers. While the matters are imperfectly presented, it may be said that the witness was permitted to give his opinions and conclusions as to the effect of the jerking of the train on the cattle, rather than facts, which should be avoided on another trial.

Sowder testified that he was a stockman and resided in Toronto, Kan.; that he was in Carlsbad and saw the cattle at or about the time they were shipped; that he accompanied the first shipment; that he had 18 years experience in handling cattle, handling from 500 to 1,500 every year during that time. He was then permitted to testify: "I believe that if the cars had been properly bedded, and the train had made the ordinary trip and under ordinary circumstances, and the cattle had been unloaded and fed at proper intervals, that the loss would not have exceeded 5 per cent. in the shipment that left Carlsbad on April 20th." The witness was qualified as an expert to give the testimony, and it was not error to admit it. In this instance, as in a number of others, appellants have presented an assignment of error complaining of certain testimony set out in a certain bill of exceptions, which contains objections to answers on totally different subjects, and they would not be considered, were it not that, as the judgment is to be reversed on another ground of error, they should perhaps be considered, although imperfectly or incorrectly presented. The bill of exceptions upon which the assignment under consideration is based not only presents objections to the testimony as to what the loss would have been if the cattle had been properly handled, but to the testimony of Sowder as to the market value of the cattle in Toronto, Kan., in the condition in which they arrived, and their market value in that place, if they had been properly transported. The witness swore that he knew the market value of such cattle in Toronto, where he lived, and fully qualified himself to testify on that subject. The same may appropriately be said of the testimony of V. L. Jamison on the subject of what the condition of the cattle would have been, when they reached Toronto, had they been properly handled, and as to their market value in that place, which is complained of in the twenty-third and twenty-fourth assignments of error. The witness qualified as an expert on both subjects. The same is true of the testimony assailed in the twenty-fifth assignment of error.

The witness Lusk, according to the statement of facts, which must prevail, testified in substance to what, in the twenty-sixth assignment of error, is claimed to have been rejected, and he testified very fully as to the condition of the cattle belonging to appellees at the time of shipment. The assignment is therefore overruled.

There seems to have been a lively and vigorous swearing tournament between witnesses for the contending parties as to the condition of the cattle when shipped, which made the case peculiarly one for the decision of a jury, and it is not within the province of this court, in view of a reversal, to express an opinion as to the evidence.

For the errors indicated herein, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

Our attention has been called to an agreement made by the attorneys for appellants to waive assignments 4, 6, 10, 11, 18, 20, 21, and 26, and that the "same are not urged or insisted upon," which agreement was filed in this court on June 5, 1911, two days before the cause was submitted, and the writer of the opinion failed to notice the waiver. No reason whatever is assigned for the waiver of the assignments, each of which is vigorously presented in the brief.

The only assignments of error upon which an error could be sustained having been waived by the appellants, an affirmance must necessarily follow.

We find that there was evidence upon which the jury could base the verdict in favor of appellee, and this conclusion disposes of the assignments of error attacking the sufficiency of the evidence to support the verdict. Great leniency has been exercised in considering several of the assignments, which are presented without a due regard for the rules.

A rehearing is granted, our former judgment is set aside, and the judgment of the lower court is affirmed.