AMERICAN LINSEED OIL CO. v. CRUMBINE, Chief Food and Drug Inspector of Kansas.

(Circuit Court of Appeals, Eighth Circuit. June 30, 1913.)

No. 3,727.

1. STATUTES (§ 107*)—CONSTITUTIONALITY—SUBJECT OF ACT.

Sess. Laws Kan. 1911, c. 179, entitled "An act to prevent the adulteration of turpentine, linseed oil or flaxseed oil, prevent deception in the sale thereof, and to provide for the punishment of such adulteration and deception," and the provisions of which accord with such title, is not invalid as in violation of Const. Kan. art. 2, § 16, providing that no bill shall contain more than one subject, which shall be clearly expressed in its title, in that it deals with both turpentine and linseed or flaxseed oil; the subject-matter of the act, from a legislative view, being adulteration.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 121–134; Dec. Dig. § 107.*]

2. CONSTITUTIONAL LAW (§ 276*)—LIBERTY TO CONTRACT—POLICE POWERS OF STATE—LAWS TO PREVENT FRAUD.

Provisions in such act prohibiting the sale of any article under the name of turpentine which is not in fact turpentine and unadulterated, or any adulterated turpentine or compound of linseed or flaxseed oil unless plainly marked on the container with the word "adulterated" or "compound," with a statement of the actual proportion of its ingredients, do not render it unconstitutional as in violation of any rights guaranteed by the fourteenth constitutional amendment, but such provisions are clearly within the police powers of the state.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 845, 846; Dec. Dig. § 276.*]

Appeal from the District Court of the United States for the District of.Kansas; John C. Pollock, Judge.

Suit in equity by the American Linseed Oil Company against Samuel J. Crumbine, as Chief Food and Drug Inspector of the State of Kansas. Decree for defendant, and complainant appeals. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Hugh A. Myers, of Omaha, Neb., and W. A. S. Bird, of Topeka, Kan. (S. L. Lashbrook, of Topeka, Kan., on the brief), for appellant.

John S. Dawson, Atty. Gen., and S. N. Hawkes, Asst. Atty. Gen. (Price, Alburn & Daoust, of Cleveland, Ohio, of counsel), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and WILLARD, District Judge.

CARLAND, Circuit Judge. The American Linseed Oil Company, a corporation of the state of Ohio, filed the bill in this action against Samuel J. Crumbine for the purpose of having chapter 179, Session Laws of the state of Kansas 1911, declared unconstitutional and void upon two grounds:

First, because said act violates the provision of section 16, art. 2, of the Constitution of the state of Kansas, which provides as follows:

"No bill shall contain more than one subject, which shall be clearly expressed in its title."

Second, because said act violates the fourteenth amendment to the Constitution of the United States in that it prohibits the sale of any compound of linseed oil in the state of Kansas regardless of how it may be labeled.

By stipulation the case was heard upon demurrer to the bill and final judgment was rendered by the trial court dismissing the same. The bill alleges that Samuel J. Crumbine is the legally appointed, duly authorized, and acting chief food and drug inspector of the state of Kansas, whose duties are the enforcement of certain special enactments made by the Legislature of said state pertaining to the purchase and sale of foods, beverages, condiments, medicines, linseed oil, paints, and other products included therein; that appellant is engaged in manufacturing, buying, selling, and importing pure linseed oil, linseed oil compounds and blends, and has a large number of customers and prospective customers in the state of Kansas to whom it has for a considerable period of time offered for sale through advertisements and sold by mail orders and by traveling salesmen its aforesaid products within said state; that among said products is a certain compound or blend of linseed oil composed of less than 96 per cent. of linseed oil, which it had during the time aforesaid offered for sale and sold, by means aforesaid, to its customers within said state as a substitute for linseed oil, said compounds or blends being known and labeled as follows:

"The American Linseed Oil Company, Omaha, Nebraska. Boiled Linseed Oil, not sold or intended for Food or Medicinal Purposes."

"The American Linseed Oil Company, Omaha, Nebraska. Raw Linseed Oil, not sold or intended for Food or Medicinal Purposes."

That, beginning some time prior to the commencement of this suit, the said defendant, assuming to act in his official capacity as chief food and drug inspector of the state of Kansas, has continually therefrom wrongfully and unlawfully opposed the sale and introduction of said compounds and blends of linseed oil, described as aforesaid, within said state, and unlawfully advised appellants' customers and prospec-

tive customers to refuse to contract with appellant for the purchase and sale of said linseed oil compound or blends, and threatened to prosecute appellant in the event of the sale or offer to sell by it of the aforesaid compounds or blends to any person, firm, or corporation within said state; that appellant has sold in manner aforesaid and shipped to its said customers within the state of Kansas the compounds or blends of linseed oil above mentioned as a substitute for linseed oil, under the name "Linsol" and in containers labeled as follows:

"The American Linseed Oil Company, Omaha, Nebraska. Linsol, not sold or intended for Food or Medicinal Purposes."

That appellant has sold in manner aforesaid and shipped within the state to its aforesaid customers the aforesaid compound or blend of linseed oil as a substitute for linseed oil, under the name "Blended Linseed Oil" and in containers known and labeled as follows:

"The American Linseed Oil Company, Omaha, Nebraska. Blended Linseed Oil, not sold or intended for Food or Medicinal Purposes."

That said defendant, assuming to act in his official capacity as chief food and drug inspector of the state of Kansas, wrongfully and unlawfully opposed the sale and introduction of the aforesaid compounds or blends of linseed oil within said state, sold and labeled as "Linsol" or sold and labeled as "Blended Linseed Oil," and threatens to prosecute appellant and its customers in the event of a sale of the same, and that said defendant threatens to continue to oppose and to prevent the sale thereof, claiming that the law hereinbefore referred to wholly prohibits the manufacture, sale, or offer for sale or use within the state of Kansas said compounds of linseed oil labeled as aforesaid.

[1] The law claimed to be unconstitutional appears in the margin.[1] It is claimed that this law violates section 16, art. 2, of the Con-

1 Chapter 179, Session Laws of the State of Kansas, 1911:

An act to prevent the adulteration of turpentine, linseed oil or flaxseed oil, prevent deception in the sale thereof, and to provide for the punishment of such adulteration and deception.

Be it enacted by the Legislature of the state of Kansas:

Section 1. Hereafter it shall be unlawful to manufacture, mix for sale, sell, offer or expose for sale in this state, under the name of raw linseed oil or flaxseed oil, any substance which is not wholly the product obtained from well cleaned flaxseed or linseed, and unless the same fulfills the latest requirements of the United States Pharmacopœia, or any so-called boiled linseed oil, or boiled flaxseed oil, unless the same shall have been prepared by incorporating dried with raw linseed oil, as defined above, at a temperature of not less than 225 degrees Fahrenheit, and unless the same contains not less than 96 per cent. of linseed oil. And for the purpose of this act it shall also be deemed a violation thereof if boiled linseed oil does not conform to the following requirements: (1) Its specific gravity at 60 degrees Fahrenheit must be not less than 0.935. (2) Its saponification value (Koettstorfer figure) must not be less than 186. (3) Its iodine number (Huebl's method) must not be less than 160. (4) Its acid value must not exceed 10. (5) The volatile matter expelled at 212 degrees Fahrenheit must not exceed one-half of one per cent. (6) No mineral oil shall be present, and the amount of unsaponifiable matter as determined by standard methods shall not exceed 2.5 per cent. (7) The film left after flowing the oil over glass and allowing it to

stitution of the state of Kansas, for the reason that it contains more than one subject, namely, adulteration of turpentine and adulteration of linseed or flaxseed oil; the contention being that no such natural relation exists between the oil extracted from the seed of flax and that substance which is by distillation extracted from the gum of the long-leaf pine and other trees, called turpentine, as will in the face of the constitutional provision quoted permit the Legislature to unite

drain in a vertical position must dry free from tackiness in not to exceed twenty hours, at a temperature of about 70 degrees Fahrenheit. It shall be unlawful to manufacture, mix for sale, sell, offer for sale or expose for sale in this state under the name of turpentine or spirits of turpentine or any compound of the word turpentine, or under any name or device illustrating or suggesting turpentine, oil of turpentine or spirits of turpentine any article which is not wholly distilled from rosin, turpentine gum, or scrape from pine trees, and unmixed and unadulterated with oil, benzine or any other foreign substance of any kind whatsoever.

Sec. 2. No person, firm, or corporation shall sell, expose or offer for sale any turpentine, flaxseed oil or linseed oil, unless it is done under its true name, and each barrel, keg or can of such oil so sold exposed or offered for sale, has distinctly and durably painted, stamped, stenciled, labeled or marked thereon the true name of such oil in ordinary bold-faced capital letters, not less than five lines pica in size, and the name and address of the manufacturer thereof, or that of the jobber or dealer therein: Provided, that if the contents of the package be less than twenty-five gallons, a label may be used printed in type not less than two-line pica in size.

Sec. 3. Any person, firm, or corporation who shall fail to comply with the requirements of section 2 of this act, or falsely paint, stencil, label or mark, as required by section 2, said barrels, kegs or cans containing turpentine, flaxseed oil or linseed oil or knowingly permit such false painting, stamping, labeling or marking, or violate any of the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction punished with a fine of not less than ten dollars nor more than one hundred dollars, or imprisonment not less than ten days nor more than ninety days or both for each offense.

Sec. 4. Nothing in this act shall be construed as prohibiting the manufacture or sale of adulterated spirits of turpentine or linseed oil compounds: Provided, if such compounds or adulterations are designed to take the place of raw or boiled linseed oil or turpentine as defined in section 1 of this act, they shall not be manufactured or mixed for sale, sold, offered or exposed for sale under any title or designation conveying the impression, either directly or indirectly, that it is flaxseed oil or linseed oil, and all compounds of linseed oil or flaxseed oil shall, when sold, offered or exposed for sale, under invented proprietary names or titles, bear conspicuously upon the containing vessel in capital letters not less than five-line pica in size, the word "compound," or "adulterated" and be labeled so as to state clearly and distinctly the actual proportions of turpentine or linseed oil and other ingredients contained therein, said label to be printed in the English language, in plain legible type in continuous list, with no intervening matter of any kind.

Sec. 5. The chief food and drug inspector, as well as his inspectors, assistants, experts, analysts, or others appointed by him, shall have full rights of ingress and egress to the premises occupied by parties who manufacture, deal in or compound turpentine, linseed oil or flaxseed oil, and also have power and authority to open any tank, barrel, can or other vessel believed to contain such oil, turpentine, or products used in its manufacture, and to inspect the contents thereof, and to take therefrom samples for analysis, and in case any of the samples so taken shall prove on analysis to be adulterated in violation of the provisions of this act, it shall be the duty of the person securing the sample to proceed against the offender as herein provided.

Sec. 6. This act shall take effect upon its publication in the statute book.

them under the same head or title in making a provision against their adulteration and sale, but that to accomplish such purpose two separate acts must be passed. The trial court was of the opinion that turpentine could be properly classified as an oil and that there was no such want of relation between turpentine oil and flaxseed or linseed oil as to forbid the Legislature from so classifying them under the Constitutional provision above quoted. The position taken by the trial court may be correct, but we are of the opinion that the subject-matter of the law complained of is adulteration, and so considered there is certainly but one subject contained in the act. The general subject of the law being adulteration, the Legislature could extend its provisions to such compositions as it wished. In regard to the proper construction of section 16, art. 2, of the Constitution of Kansas, the Supreme Court of that state in the case of State v. Barrett, 27 Kan. 213, used the following language:

"In order to correctly interpret that provision of section 16, art. 2, of the Constitution, * * * its object must be taken into consideration; and the provision must not be construed or enforced in any narrow or technical spirit but must be construed liberally on the one side so as to guard against the abuse intended to be prevented by it, and liberally on the other side so as not to embarrass or obstruct needed legislation.

" * * * The title of an act may be as broad and comprehensive as the Legislature may choose to make it; or it may be as narrow and restricted as the Legislature may choose to make it. It may be so broad and comprehensive as to include innumerable minor subjects, provided all these minor subjects are capable of being so combined and united as to form only one grand and comprehensive subject; or it may be so narrow and restricted as to include only the smallest and minutest subject.

"And while the title to an act may include more than one subject, provided all can be so united and combined as to form only one single, entire, but more extended subject, yet neither the title to the act nor the act itself can contain more than one subject, unless all the subjects which it contains can be so united and combined as to form only one single subject.

"In construing the title to an act, as well as the act itself, reference must be had to the object of the act, and to the evil sought to be remedied by it."

In Rathbone v. Hopper, 57 Kan. 245, 45 Pac. 611, 34 L. R. A. 674, the same court said:

"A technical interpretation, however, has never been applied in this state to the titles of legislative acts. On the other hand, it has been consistently held that the constitutional limitation should not be enforced in any narrow or technical spirit but should be liberally interpreted with a view of upholding the acts of the Legislature. It has been regarded to be the duty of the court to view the acts of the Legislature with great respect and so far as possible endeavor to reconcile and sustain them. Illustrations of liberal interpretations placed upon the titles of acts may be found in almost every volume of our decisions, but we need only refer to a few of them. Woodruff v. Baldwin, 23 Kan. 494; Philpin v. McCarty, 24 Kan. 393; Com'rs of Marion Co. v. Com'rs of Harvey Co., 26 Kan. 181; Com'rs of Cherokee Co. v. State ex rel., 36 Kan. 337 [13 Pac. 558]; Mo. Pac. Ry. Co. v. Harrelson, 44 Kan. 253 [24 Pac. 465]; State v. Bush, 45 Kan. 140 [25 Pac. 614]; In re Pinkney, Petitioner, 47 Kan. 89 [27 Pac. 179]; State ex rel. v. Lewelling, 51 Kan. 562 [33 Pac. 425]; In re Sanders, Petitioner, 53 Kan. 191 [36 Pac. 348, 23 L. R. A. 603]; Lynch v. Chase, 55 Kan. 367 [40 Pac. 666]; Rogers v. Morrill, 55 Kan. 737 [42 Pac. 355]."

[2] Upon the second point we are also of the opinion that the law does not offend against any provision of the fourteenth amendment to

the Constitution of the United States. The law does not prohibit appellant from selling its merchandise within the state of Kansas; it simply requires that, if appellant shall sell the compounds and blends of linseed oil described in the bill, it shall be properly marked. The object of the statute in this respect is to prevent fraud and deception. Appellant ought not to complain of a law which requires it to state upon the package, in which its compound or blend is contained, a true statement in the English language as to just what the compound or blend is. The people of the state of Kansas, or of any other state, have a right to know when they purchase an article as to just what it is. Then if they purchase it, and do so knowingly, they cannot complain. The law makes this clear in section 4 of the act. That section, speaking in general terms, provides that the law shall not be construed as prohibiting the manufacture or sale of adulterated spirits of turpentine or linseed oil compounds, provided, if such compounds or adulterations are designed to take the place of raw or boiled linseed oil or turpentine as defined in section 1 of the act, they shall not be manufactured or mixed for sale, sold, offered or exposed for sale under any title or designation conveying the impression, either directly or indirectly, that it is flaxseed oil or linseed oil, and all compounds of linseed oil or flaxseed oil shall, when sold, offered or exposed for sale, under invented proprietary names or titles, bear conspicuously upon the containing vessel, in capital letters not less than five-line pica in size, the word "compound" or "adulterated" and be labeled so as to state clearly and distinctly the actual proportions of turpentine or linseed oil and other ingredients contained therein; said label to be printed in the English language in plain legible type with no intervening matter of any kind. This law simply requires appellant and other persons or corporations subject to its provisions to be reasonably honest. We have no doubt of the power of the state of Kansas to legislate in order to prevent fraud and deception in the sale of any kind of property to her people. The power of the states to pass such laws has been uniformly and repeatedly recognized by the Supreme Court of the United States. Powell v. Commonwealth of Pennsylvania, 127 U. S. 678, 8 Sup. Ct. 992, 1257, 32 L. Ed. 253; Chicago, Burlington & Quincy R. R. Co. v. McGuire, 219 U. S. 549, 31 Sup. Ct. 259, 55 L. Ed. 328; Schmidinger v. Chicago, 226 U. S. 578, 33 Sup. Ct. 182, 57 L. Ed. 364. Liberty of contract is not a universal right and may be abridged when required for the public good. McLean v. Arkansas, 211 U. S. 539, 29 Sup. Ct. 206, 53 L. Ed. 315; M. & S. L. R. R. Co. v. Beckwith, 129 U. S. 26, 9 Sup. Ct. 207, 32 L. Ed. 585; People v. Railway Co., 198 N. Y. 369, 91 N. E. 849, 29 L. R. A. (N. S.) 240, 139 Am. St. Rep. 828, 19 Ann. Cas. 811; Welsh v. C., B. & O. R. Co., 53 Iowa, 632, 6 N. W. 13; Jones v. Railroad Co., 16 Iowa, 6; Railway Co. v. McCann, 174 U. S. 580, 19 Sup. Ct. 755, 43 L. Ed. 1093; Smeltzer v. Railway Co. (C. C.) 158 Fed. 649; Brush v. Railroad Co., 43 Iowa, 554; Davis v. Railway Co., 83 Iowa, 744, 49 N. W. 77; Lucas v. Railroad Co., 112 Iowa, 594, 84 N. W. 673; Waters-Pierce Oil Co. v. Texas, 212 U. S. 86, 29 Sup. Ct. 220, 53 L. Ed. 417; McCune v. Railroad Co., 52 Iowa, 602, 3 N. W. 615; Rose v. Rail-

road Co., 39 Iowa, 246; Solan v. Railroad Co., 95 Iowa, 260, 63 N. W. 692, 28 L. R. A. 718, 58 Am. St. Rep. 430; C., M. & St. P. R. Co. v. Solan, 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688; Smith v. Alabama, 124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508; N., C. & St. L. R. Co. v. Alabama, 128 U. S. 96, 9 Sup. Ct. 28, 32 L. Ed. 352; N. Y., N. H. & H. R. R. Co. v. New York, 165 U. S. 628, 17 Sup. Ct. 418, 41 L. Ed. 853; West. Un. Tel. Co. v. James, 162 U. S. 650, 16 Sup. Ct. 934, 40 L. Ed. 1105; Hennington v. Georgia, 163 U. S. 299, 16 Sup. Ct. 1086, 41 L. Ed. 166; Gladson v. Minnesota, 166 U. S. 427, 17 Sup. Ct. 627, 41 L. Ed. 1064; Central Trust Co. v. Sloan et al., 65 Iowa, 656, 22 N. W. 916.

The decree of the court below must be affirmed.